Nov. Term,
1852.

NEWCASTLE
AND RICHMOND
RAILROAD
COMPANY
v.
PERU AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

THE NEWCASTLE AND RICHMOND RAILROAD COMPANY *v.* THE PERU AND INDIANAPOLIS RAILROAD COMPANY.

In 1848, the legislature chartered *The Newcastle and Richmond Railroad Company* for the construction of a railroad from *Richmond,* in *Wayne* county, to *Newcastle,* in *Henry* county. In 1851, the legislature amended the charter of the company by authorizing them to extend said road from *Newcastle* to intersect the *Peru and Indianapolis Railroad* or the *Lafayette and Indianapolis Railroad* at such point on said roads as the *Newcastle and Richmond Railroad Company* might select. *Held,* that the terminus to which the *Newcastle and Richmond Railroad* might be extended under said amendment, was sufficiently fixed, and that the grant of the right to make such extension was not void for the uncertainty of such terminus.

When the legislature authorizes the construction of a railroad between two designated points, no intermediate point being named, and there are routes between said points equally feasible, that which is most direct will be deemed to have been contemplated; but where there is a difference in the feasibility of the routes, a reasonable discretion must be allowed in the selection of that to be followed.

Section 16 of the charter of the *Peru and Indianapolis Railroad Company,* which enacts that when said company shall have procured the right of way through land, either by the voluntary release of the owner or by condemning the same, they shall be seized in fee-simple of the right to such land, and shall have the sole use and occupancy thereof, does not vest in said company the right to the exclusive possession of the land occupied by the road, but vests the fee-simple subject to the right of the state to take the same, upon compensation being made, for the public use.

The clause in said charter immediately following that last cited, is, that "no person, body politic or corporate, shall in any way interfere with, molest, disturb, or injure any of the rights or privileges" thereby "granted, or that would be calculated to detract from or affect the profits of said corporation." *Held,* that the state did not thereby relinquish the right to charter any other company whose improvement would compete with said *Peru and Indianapolis Railroad,* nor the right to take the franchise of the road for public use; but said clause restrains such other company from committing any unauthorized illegal injuries.

The *Newcastle and Richmond Railroad Company* have a right, under their charter, to have a sufficient quantity of the land over which the *Peru and Indianapolis Railroad* passes condemned for the purposes of their road, and the fee-simple vested in themselves; but this will be subject to the right of way of the *Peru and Indianapolis Railroad Company.*

Tuesday,
November 23.

APPEAL from the *Tipton* Circuit Court.

PERKINS, J.—The *Peru and Indianapolis Railroad Com-*

Nov. Term,
1852.

NEWCASTLE
AND RICHMOND
RAILROAD
COMPANY
v.
PERU AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

*pany* filed a bill in the *Howard* Circuit Court against the *Newcastle and Richmond Railroad Company*, praying an injunction restraining the latter company from constructing their road, &c.

The bill states that the former company was chartered in 1846; that the 19th section of the charter enacted: " That when said corporation shall have procured the right of way as hereinbefore provided, they shall be seized in fee-simple of the right of such land, and they shall have the sole occupancy and use of the same, but not to interfere with the right of way of any other railroad company heretofore incorporated; and no person, body politic or corporate, shall in any way interfere with, molest, disturb, or injure any of the rights or privileges hereby granted, or that would be calculated to detract from or affect the profits of said corporation."

The bill further states that said company have procured the right of way from *Indianapolis* to *Peru*, have completed twenty-two miles of their road, and are actively engaged in constructing the remainder. It further states that, in 1848, the *Newcastle and Richmond Railroad Company* were incorporated, and that, in 1851, the legislature, by an amendment to the charter, authorized said company to extend their road " from *Newcastle*, in *Henry* county, to intersect the *Peru and Indianapolis Railroad*, or the *Lafayette and Indianapolis Railroad*, at such point on said roads as said *Newcastle and Richmond Railroad Company* may determine upon." The charter of this latter company contains the usual provisions in regard to the mode of assessing damages in procuring the right of way, &c.

The bill further alleges that said *Newcastle and Richmond Railroad Company* have elected to intersect the *Lafayette and Indianapolis Railroad* at *Lafayette*, and are surveying and locating their road to that point; that their route passes the *Peru* and *Indianapolis* railroad at *Kokomo*, proceeds thence to *Logansport*, a point forty miles north of a direct line from *Newcastle* to *Lafayette*, and thence to the latter place.

Nov. Term, 1852.

NEWCASTLE AND RICHMOND RAILROAD COMPANY v. PERU AND INDIANAPOLIS RAILROAD COMPANY.

An injunction is prayed and was awarded by the Court below.

It is sought to sustain, in this Court, the injunction granted, mainly on three grounds:

1. That the western terminus of the extension of the *Newcastle* and *Richmond* railroad not being fixed by law, the grant of the right to make said extension is void. The argument is, that, to construct a railroad, it is necessary to take private property; that private property can be taken forcibly only for public use; that it is in that view only that corporations are ever authorized to take it; and that before a corporation can so take it, in any particular case, it is necessary that the legislature should declare that the public use demands it in that case.. In other words, that it is necessary, when the legislature attempts to transfer to a corporation the power to take private property for the construction of a railroad, that the legislature should expressly fix the termini of the road, thereby saying that the public interest requires a road connecting said termini, and that, hence, private property between them may be taken to make it.

We shall not now express an opinion upon the legal proposition assumed in the above argument, but shall limit ourselves to a denial of some of the material facts asserted as the basis of the legal proposition, viz., that the terminus to which the *Newcastle* and *Richmond* railroad may be extended is not fixed, and, hence, that the public use of the extension has not been declared. We think both these things have been done. A company had been chartered for the construction of a railroad from *Richmond*, on the eastern border of the state, north-westerly to *Newcastle*. Railroads were also in process of construction from *Peru* and from *Lafayette*, on the *Wabash* river, to *Indianapolis*. By extending the *Richmond* and *Newcastle* railroad to an intersection with either the *Peru* or *Lafayette* railroad, the first above-named road would be connected with an important point on the *Wabash* river and the *Wabash* and *Erie* canal. Such connection we understand the legislature to have regarded as of public utility and to

have authorized. It was not material to this public utility that the connection mentioned should be made at any particular point on either the *Peru* or *Lafayette* railroad. The public interest would be well subserved by a connection at any point on either, and the choice between the roads, and the particular point for the connection with the one selected, were left to the discretion of the corporation. The only limitation imposed was, that the connection should be by an intersection, that is, by cutting into the road selected. The connection, therefore, must be made at some point south of the northern and north of the southern terminus of the *Lafayette* railroad, that being the one chosen for intersection.

Nov. Term, 1852.

Newcastle and Richmond Railroad Company v. Peru and Indianapolis Railroad Company.

2. It is contended that if the *Richmond* and *Newcastle* company were authorized to extend their road to some point on the *Lafayette* and *Indianapolis* railroad, then they were bound to make the extension in a direct line to that point, and could not deviate from such a line 40 miles north to *Logansport*. When the legislature authorizes the construction of a railroad between two designated points, no intermediate point being named, undoubtedly, where the routes between said fixed points are equally feasible, the most direct would be contemplated. But where there is a difference in the feasibility of routes some reasonable discretion must be allowed in the selection of that to be followed. To how great an extent a deviation from a direct line would be permitted, we are not called upon now to decide, as there is no allegation in the bill in the present case that there is any feasible route between *Newcastle* and the point selected for an intersection of the *Lafayette* and *Indianapolis* railroad, except that chosen by the way of *Logansport*. If there be any such it must be alleged in an amendment to the bill.

3. The third ground insisted on is, that the *Richmond* and *Newcastle* railroad cannot be extended to the *Lafayette* and *Indianapolis* railroad without crossing the *Peru* and *Indianapolis* railroad, and that it cannot cross that road without violating exclusive rights vested in the company constructing said road.

Nov. Term,
1852.

NEWCASTLE
AND RICHMOND
RAILROAD
COMPANY
v.
PERU AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

1. It is claimed that the *Peru* and *Indianapolis* railroad company have the exclusive right to the use of the ground over which the track of their road passes; and,

2. That they have the exclusive right of furnishing the facilities for transportation for an indefinite region of country round about their road.

We cannot admit that either of these claims is well grounded. Section 15 of the charter of said company authorizes them to obtain releases of the land along the line of the road; section 16 permits them, where a voluntary release is refused, to have the land condemned in the manner usual in such cases; and section 19 declares " that when said corporation shall have procured the right of way" in either of said modes, " they shall be seized in fee-simple of the right to such land, and they shall have the sole use and occupancy of the same," &c. This latter provision is insisted on as a contract on the part of the state for the exclusive possession by said company of the lands mentioned; but we do not so regard it. We think it simply intended as declaratory of the effect which the releases and condemnations of land spoken of in the 15th and 16th sections should have; that is, whether they should be taken to convey an easement, a right of way merely, or a fee-simple title, and declaring it should be the latter; that they should have the same force that deeds from the proprietors in the usual form to the company, conveying to their sole use, &c., would have, subject of course, as expressly declared in the section, to all previous grants of rights of way, and subject, impliedly of course, as all ordinary grants of land by one person to another, or by the state to a person, are, to the right of the state to take the lands granted, on compensation made, for the public use. If the view taken by the counsel for the *Peru* and *Indianapolis* railroad company be correct, the state cannot, without the consent of said company, permit the construction of a state or county highway across the track of said railroad. It would require the clearest expression to satisfy us that a legislature had attempted to commit so great a folly.

The clause in the charter upon which the claim to the exclusive right of transportation is rested is as follows: " And no person, body politic or corporate, shall, in any way, interfere with, molest, disturb, or injure any of the rights or privileges hereby granted, or that would be cal‑ culated to detract from or affect the profits of said corpo‑ ration." This language is taken to be a relinquishment on the part of the state of the right to charter any other company whose improvement would be in competition with the *Peru* and *Indianapolis* railroad, and also of the right to take the franchise of said railroad company for public use. If such be the force of the language quoted, then the state has deprived herself of the power to char‑ ter further companies for the improvement of any portion of her eastern half, for no road can be made extending north, east, or south, in the east half of the state that will not tend to diminish the profits of the *Peru* and *Indian‑ apolis* railroad. It is not necessary that we should here de‑ cide whether the state can deprive herself, by contract with a citizen, of any part of her sovereignty, her right of eminent domain. It is sufficient for this case to say, that she will not be taken to have done it without a very clear expression to that effect. Such an expression has not been made in the charter of the *Peru* and *Indianapo‑ lis* railroad company. The language relied on as evi‑ dencing the deprivation is vague and indefinite. But it does not purport to restrain the power of the state in the creation of corporations or otherwise. It assumes, in‑ deed, that others are to exist in the vicinity of the *Peru* and *Indianapolis* railroad, but restrains such corporations from injuring the company that owns it. This must re‑ late to unauthorized illegal injuries.

One point more is made. It is urged that there is no pro‑ vision in the *Richmond* and *Newcastle* railroad charter for making compensation for injury done to the franchise of the *Peru* and *Indianapolis* railroad company. It is assumed that the crossing of their track by another road will be an injury to their franchise. We do not see how it will be so. We know, as matter of general information, that rail‑

roads do cross each other in every part of the world where they exist, and that, by observing proper time regulations, they do this without injury or inconvenience to each other. It is true, the *Newcastle* railroad company are authorized to have the land condemned over which the *Peru* track passes, and have the fee-simple vested in themselves; but this will be held subject to the right of way of the *Peru* and *Indianapolis* railroad company. The franchise of this latter company is not taken away with the fee-simple of the land. But if it were taken or injured, we do not see why damages might not be obtained for it under the general provision in the *Newcastle* and *Richmond* railroad charter for making compensation for injury to real estate; nor why such compensation might not be included in the assessment for the taking of the land. If a railroad were to pass through a man's door-yard, greater damages would be given for taking ground through it than would be given for the taking of an equal quantity of equally good ground in the midst of an open field, because of the use such ground was put to, and the inconvenience its taking for a railroad would occasion to the proprietor. Why not, in taking the ground occupied by one railroad for the use of another, if its taking would injure the franchise of the former, pay, as in the case of taking the door-yard, an amount of damages compensatory of the whole injury done? But however this might be, the mere surveying and laying down a railroad across another is no injury to the franchise of such other. The running of the cars, if anything, must occasion the interference and injury. And if at present there are not sufficient provisions in the charters of these roads respectively to secure their mutual rights in running their roads, there is yet time enough before they can be completed for the legislature to afford adequate relief in that respect.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*D. Kilgore, W. Wright,* and *D. D. Pratt,* for the appellants.

*L. Barbour, J. L. Jernegan,* and *A. G. Porter,* for the appellees.