Filed Nov. 27, 1883.

———————

No. 8234.

CLEVELAND, COLUMBUS, CINCINNATI AND INDIANAPOLIS RAILWAY COMPANY v. COBURN ET AL.

RAILROAD.—*Conveyance.*—*Condition Subsequent.* — *Right of Way.* — *Title.*— *Statute Construed.*—The 21st section of the charter of the Indianapolis and Bellefontaine Railroad Company does not give to a conveyance of the *right of way* upon a condition subsequent the effect of a conveyance of land in fee simple absolute.

SAME.—*Breach of Condition in Deed.*—*Consideration.*—*Abandonment.*—*Release.*—A conveyance to a railroad company of the right of way for its road, the consideration of which is shown to be the construction and permanent maintenance of the road upon the line so granted, and the erection and maintenance of its depot upon adjoining lands, is upon condition subsequent, and if such depot and track be afterwards abandoned, it is a breach of the condition, which defeats the grant. And if, upon such abandonment, the grantor, for a valuable consideration from the railroad company, grant the right of way to another person and release the company of all damages and rights of action by reason of the removal of the depot, no title to the land will be or remain in the railroad company.

From the Superior Court of Marion County.

*H. H. Poppleton, J. T. Dye* and *A. C. Harris,* for appellant.

*C. H. Test, J. Coburn, W. Wallace, T. A. Hendricks, A. W. Hendricks, C. Baker* and *O. B. Hord,* for appellees.

BICKNELL, C. C.—It is not disputed that the appellant holds all the rights of the Indianapolis and Bellefontaine Railroad Company to the land in controversy in this suit. All the defendants except Thomas A. Hendricks and wife, Aquilla Parker and Mrs. Lingenfelter, are the heirs at law of Henry P. Coburn. Hendricks and wife and Parker and Mrs. Lingenfelter claim under conveyances made by the Coburn heirs in 1859, 1861 and 1862.

The land in controversy is a strip eighty feet wide extending through out-block No. 182 in Marion county, Indiana. This out-block belonged to Henry P. Coburn, who subdivided it into lots, and, on March 9th, 1854, filed a plat thereof in the recorder's office of Marion county, on which the strip in controversy is named Curve street.

In 1866, on the petition of the Coburn heirs, Curve street was vacated by the common council of Indianapolis, except an alley twelve feet wide in the center thereof, between Ash and Plum streets. Afterwards some of the owners of the lots abutting on the vacated street enclosed parts of it. On the 17th of August, 1874, the appellant brought this suit, claiming to be the owner of said strip of land, and seeking to establish its boundaries, to quiet the title thereto, and to obtain possession of so much of it as was held adversely.

The appellant claims title as follows:

It holds the rights of the Indianapolis and Bellefontaine Railroad Company, which was chartered in 1848, to build a railroad from Indianapolis to the Ohio State line, near the site of Union City.

It was authorized to acquire, by relinquishment and by condemnation, lands and materials for the construction of its road. Its charter, in section 18, provides that "It shall be lawful for said company, either before or after the location of any section of said road, to obtain from the person or persons through whose land the same may pass a relinquishment of so much of the land as may be necessary for the construction or location of said road * * * * and that all such relinquishments * * * * made and entered into in writing, by any person or persons capable of contracting, made in consideration of such location or construction of said road, for the benefit of the company, shall be binding and obligatory; and said company may have their action at law or in chancery, in any court of competent jurisdiction, to compel the performance of the same."

In section 21 the charter provides that "when said com-

pany shall have procured the right of way as hereinbefore provided they shall be seized in fee simple of the right of said land, and shall have the sole use and occupation of the same, and no person * * * * shall in any way interfere therewith, or disturb, molest or injure any of the rights and privileges hereby granted, so as to detract from or affect the profits of said corporation."

The language of this section is somewhat obscure. The Legislature, in exercising the right of eminent domain, has the power to determine the estate or quantity of interest in the lands which shall be taken, whether an estate for years, for life, or in fee; whether a right of reversion in any event shall be left in the owner, or whether a mere easement shall be taken, without divesting the general ownership of the land. *Heyward* v. *Mayor*, 7 N. Y. 314; *Water Works Co.* v. *Burkhart*, 41 Ind. 364, 373.

But section 21, *supra*, does not expressly provide that the company shall be seized in fee simple of the land. The words are, " They shall be seized in fee simple of the *right* of said land, and shall have the sole use and occupation of the same,. and no person shall interfere therewith."

In the absence of any judicial construction of this language, it might be supposed to mean that the company shall be the owner of the right relinquished, which might be a fee, or a less estate, or a mere easement, according to the terms of the written relinquishment. But the very same language, in another charter, has been construed by this court as follows: " We think it simply intended as declaratory of the effect which the releases and condemnations of land * should have ; that is, whether they should be taken to convey an easement, a right of way merely, or a fee simple title, and declaring it should be the latter ; that they should have the same force that deeds from the proprietors in the usual form to the company, conveying to their sole use, etc., would have." *Newcastle, etc., R. R. Co.* v. *Peru, etc., R. R. Co.*, 3 Ind. 464. Under this construction, an unconditional relinquishment of the land undoubtedly would.

have vested in the railroad company the absolute fee simple of the land, but the statute under consideration can not be held to impair the right to make contracts. *Fisher* v. *Evansville, etc., R. R. Co.*, 7 Ind. 407; *Evansville, etc., R. R. Co.* v. *City of Evansville*, 15 Ind. 395.

The company is not bound to accept a conditional relinquishment; it may proceed to acquire the land by condemnation. If it does not proceed by condemnation, but accepts a relinquishment coupled with conditions, then, upon general principles, if the conditions are precedent, they must be performed before the rights of the company can be complete, and if the conditions are subsequent, a failure to perform the conditions may be followed by a forfeiture of the estate of the company, even if it be a fee simple. *Leach* v. *Leach*, 4 Ind. 628; *Lindsey* v. *Lindsey*, 45 Ind. 552, 562.

On the 27th of February, 1849, the plaintiff's road was located through the out-block No. 182, eighty feet in width, by an accurate survey. On the following day Henry P. Coburn executed to the railroad company the following deed of relinquishment:

"INDIANAPOLIS AND BELLEFONTAINE RAILROAD.

"RELEASE OF RIGHT OF WAY.

"I, Henry P. Coburn, of the county of Marion and State of Indiana, for and in consideration of the advantages which may or will result to the public in general, and myself in particular, by the construction of the Indianapolis and Bellefontaine Railroad, as now surveyed, or as the same may be finally located, and for the purpose of facilitating the construction and completion of said work, do hereby for myself, my heirs, executors, administrators and assigns, release, relinquish and forever quitclaim to the president and directors of the Indianapolis and Bellefontaine Railroad Company the right of way for so much of said railroad as may pass through the following described piece, parcel, or lot of land, to wit: Out-block No. 182, situated, lying and being in the county of Marion and State of Indiana, being part of the donation

lands for the seat of government for the State of Indiana. This release to cover eighty feet in width, or forty feet from the center of the road on each side. Said company shall make the necessary culverts under the track to pass the water, and I reserve the right to lay down and keep a railroad track in front of the lots adjoining the road, and also of connecting the same with the track of the railroad in such way and manner as shall be designated and approved by the board. And I hereby further release and relinquish to the president and directors of the Indianapolis and Bellefontaine Railroad Company, all damages and right of damages, actions and causes of actions whatever, which I might sustain, or be entitled to by reason of anything connected with or consequent upon the location or construction of such work, or the repairing thereof when finally established and completed.

"Witness my hand and seal this 28th day of February, A. D. 1849.               H. P. COBURN.   [SEAL.]"

This deed was not recorded until August 14th, 1867, more than seventeen years after its acceptance by the company, but it was valid as between the parties thereto. The foregoing instrument is not an unconditional relinquishment of a right of way. The depot of the company at Indianapolis was to be erected on out-block No. 181, adjoining out-block No. 182, and the location of the track through the latter block approaching the proposed depot on block No. 181, and the acceptance by the company of the aforesaid relinquishment were parts of one transaction. Unquestionably, the intention of the parties was that the depot should be constructed and permanently maintained on out-block 181, and that the track upon out-block 182 was to be permanently maintained as an approach to the depot. The relinquishment states its consideration, to wit, advantages to the public in general and to the grantor in particular, by the construction of the railroad as now surveyed, that is, on the land relinquished; but without permanence there would be no advantages, and such per-

manence was the principal consideration. This appears clearly from the subsequent provisions, to wit, that the company shall make the necessary culverts under the track to pass the water, and that the grantor reserves the right to *lay* down and *keep* a railroad track on the ground relinquished in front of the lots adjoining the same, and also of connecting the same with the track of the railroad.

In the *Indianapolis, etc., R. W. Co.* v. *Hood,* 66 Ind. 580, it was held that where real estate is conveyed to a railroad company for and in consideration of the permanent location and construction of the depot of its railroad thereon, and such depot is constructed thereon, but is subsequently removed and located upon other land, the removal constitutes a breach of a condition subsequent, although the word " condition " be not used in the deed. The court cited *Cross* v. *Carson,* 8 Blackf. 138 (44 Am. Dec. 742) ; *Leach* v. *Leach, supra; Leach* v. *Leach,* 10 Ind. 271 ; *Scott* v. *Stipe,* 12 Ind. 74, and *Clark* v. *Holton,* 57 Ind. 564. See, also, *Rawson* v. *Inhabitants,* 7 Allen, 125 ; *Horner* v. *Chicago, etc., R. W. Co.,* 38 Wis. 165 ; *Hunt* v. *Beeson,* 18 Ind. 380.

In determining the question whether the estate granted is one upon a condition subsequent, the court will seek to enforce the intention of the parties, to be gathered from the instrument and the existing facts. 4 Kent Com. 132 ; 2 Parsons Con. 499 ; Chitty Con. 74 ; *Horner* v. *Chicago, etc., R. W. Co.,* 38 Wis. 165, 174. We therefore think that the relinquishment in controversy created in the railroad company an estate upon condition subsequent, liable to be defeated upon the non-performance of the condition.

The relinquishment was dated February 28th, 1849. The railroad company built its track through out-block 182, and in 1851 or 1852 built its depot on five acres of ground in out-block 181, and in August, 1853, sold the five acres and the buildings thereon to Farnsworth, for the purpose of a car manufactory, and this conveyance included the right of way in common with said company over the tracks of the railroad across out-block 182.

On the 28th of February, 1854, Henry P. Coburn executed to the railroad company the following instruments:

" OLD DEPOT GROUNDS.                WARRANT NO. 8033.

"Received, February 28th, 1854, from the Indianapolis and Bellefontaine Railroad Company the sum of nine hundred and fifty dollars for right of way to old depot grounds at Indianapolis, by check at twenty days.

(Signed)        " H. P. COBURN."

" Whereas the president and directors of the Indianapolis and Bellefontaine Railroad Company formerly had a depot located on out-lot number 181 of the donation lands adjoining the city of Indianapolis, Marion county, Indiana, which they have removed; and whereas, to procure the location of said depot, I subscribed stock to said railroad company; and whereas, at the request of said railroad company, I have this day released to Joseph Farnsworth, Jr., the right of way over my out-lot in said city numbered one hundred and eighty-two; and whereas said $950 is paid to me by said railroad company: Now, in consideration of the premises, I release and relinquish to the president and directors of the Indianapolis and Bellefontaine Railroad Company all damages and right of damages, actions and causes of action whatever, which I might sustain or be entitled to by reason of anything connected with the removal of said depot, or by reason of my subscription and payment of said stock.

" Witness my hand and seal this 28th day of February, A. D. 1854.        (Signed)        H. P. COBURN.  [SEAL]

" Witness, S. YANDES."

These instruments were executed a few days before Coburn filed his plat of out-block 182, on which the strip relinquished to the railroad company was named " Curve street." Coburn died intestate in July, 1854.  The railroad tracks remained on the land relinquished to the company until 1862, when they were taken up by the company, who utterly abandoned the use of Curve street on or before December 1st, 1862.

On the 26th of July, 1862, the plaintiff had presented a

petition to the common council of Indianapolis making certain propositions, which were accepted by the city and acted upon by the parties.   In that petition the plaintiff states that it is desirous of.locating the track of its railroad on Railroad, Davidson, Ohio, Winston and New York streets, and will, if its prayer be granted, as soon as the new track is constructed and ready for use, abandon the use of our present route (from the proposed point of departure near Market street, through Railroad street and Massachusetts avenue, to the northeast corner of the city), and after removing the track, will surrender and convey to the city all the rights we have on the line of abandonment north of the north line of New York street.

At the time this proposition was made the strip of land in controversy was known as Curve street; Coburn's plat, with the lots laid out upon it abutting on Curve street, had been filed in 1854.   The company's proposition was to remove its main track from Massachusetts avenue eastward so as to cut off all connection with Curve street, and the track on Curve street was taken up accordingly.

We think the facts showed a breach of the condition subsequent upon which the relinquishment was made.

The appellant claims that Coburn, by the receipt and release which he executed on February 28th, 1854, waived any right he may have had to take advantage of such breach. Its brief says: " On the face of the instruments themselves, we insist that it is shown beyond question that Mr. Coburn waived any and every supposed claim he could make against the railroad, and forever put at rest any possible dispute as to the ownership of the land."

The instruments, taken together, are parts of the same transaction; they bear the same date.   The release specifies the right of way for which the money mentioned in the receipt was paid.   The jury found in their answer to one of the interrogatories that there was no other consideration for the payment of the $950 than that expressed on the face of the receipt and release.

The receipt states that the $950 was paid by the company " for right of way to old depot grounds"; these depot grounds had been sold to Farnsworth for a car factory in 1853; the release shows that for $950 " I (Coburn) have this day released to Farnsworth the right of way over my out-lot in said city, numbered 182." If the plaintiff owned Curve street, which was the site of the right of way, it did not need to procure for its grantee, Farnsworth, the right of way from Coburn; but if its title had been legally determined under the condition subsequent, then it became necessary that it should procure from Coburn, for Farnsworth, the right of way over Curve street to the buildings which it had sold to Farnsworth on lot No. 181.

There is nothing in the receipt and release, taken together, which transfers any interest in the street from Coburn to the plaintiff, or which waives any right of Coburn's accruing upon the breach of the condition subsequent.

But the release asserts that the out-lot is now Coburn's, and this the plaintiff concedes by receiving the contract. Before the breach of the condition, the entire lot was not Coburn's; the eighty-foot strip, called Curve street, had been owned and occupied by the plaintiff. If, as the contract concedes, the lot was now Coburn's, then he had either made a formal entry for the forfeiture, or else his possession and title being recognized by the contract, it became unnecessary that he should perform a useless act by making a formal entry . *Thompson* v. *Thompson,* 9 Ind. 323, 329.

The release, after reciting that the plaintiff formerly had a depot on lot No. 181, which it had removed, and that Coburn had subscribed stock in order to procure the location of the depot, and that at the request of the company he had granted a right of way to Farnsworth for $950, paid by the company, proceeds thus: " Now, in consideration of the premises, I release and relinquish to the president and directors of the Indianapolis and Bellefontaine Railroad Company all damages and right of damages, actions and causes of action whatever,

which I might sustain or be entitled to by reason of any-thing connected with the removal of said depot, or by reason of my subscription and payment of said stock."

There was no recognition of any interest of the plaintiff in the real estate in controversy, no transfer of any interest therein, and no waiver of any right of Coburn in relation thereto; but there was a clear recognition by the execution and acceptance of the contract, that Coburn was the owner of the entire block No. 182.

The facts hereinbefore recited appear upon the record by undisputed evidence; they show that the plaintiff has no right to recover in this action, and that the finding for the defend-ants in the court below was right. In such a case, a judg-ment can not be reversed for an erroneous instruction, nor for any other error, where it appears to this court that the merits of the case have been fairly tried and determined in the court below. R. S. 1881, section 658, and see R. S. 1881, section 398. The superior court in general term did not err in affirming the judgment of the superior court in special term.

The judgment of the superior court in general term ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the superior court in general term be and the same is hereby in all things affirmed, at the costs of the appellant.

ELLIOTT, J., took no part in the decision of this cause.

Filed Nov. 28, 1883.