STEVENS et al. v. GALVESTON, H. & S. A.
RY. CO. et al. (No. 55-2756.)

(Commission of Appeals of Texas, Section B.
June 11, 1919.)

1. RAILROADS ⊙➾69 — ACQUISITION OF REAL ESTATE—TITLE.

A railroad company has the right to acquire real estate without limitation or restriction in use, and when so acquired its title is as absolute as that of a private individual, at least in so far as concerns immunity from attack by any one except the state.

2. DEEDS ⊙➾93—CONSTRUCTION—INTENT.

A deed should be so interpreted as to give effect to the intention of the parties.

3. DEEDS ⊙➾100 — CONSTRUCTION — CIRCUMSTANCES OF TRANSACTION.

The court in construing language of deed susceptible of different constructions will consider the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted, for purpose of ascertaining the true intent.

4. DEEDS ⊙➾97—CONSTRUCTION—INTENT.

If any of the terms used in a deed seem to contradict the manifest intention clearly indicated by the deed as a whole, the intention must govern.

5. DEEDS ⊙➾144(1) — CONSTRUCTION—CONDITIONAL CONVEYANCE.

When the declared purpose for which the property shall be used is a matter that will inure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional than when the use is for the benefit of a special class of persons or the public at large.

6. DEEDS ⊙➾100—CONSTRUCTION—NATURE OF ESTATE GRANTED — PURPOSE OF CONVEYANCE.

In determining the character of the estate granted, the court will consider, not merely the uses for which the property was designated in the conveyance, but the relation of the grantor to those uses.

7. DEEDS ⊙➾95—CONSTRUCTION TO GIVE EFFECT TO WHOLE.

Every part of the deed must be given effect if it can be done.

8. DEEDS ⊙➾120 — CONSTRUCTION — ESTATE GRANTED.

The largest estate that the terms of a deed with all its parts harmonized will permit of will be conferred upon grantee.

---

⊙➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
* Rehearing pending.

**9. DEEDS ☞90 — CONSTRUCTION FAVORABLE TO GRANTEE.**

Where language of deed is so ambiguous as to be susceptible of different constructions, that interpretation will be adopted which is most favorable to grantee.

**10. RAILROADS ☞69—CONSTRUCTION OF DEED —ESTATE ACQUIRED.**

Deeds to a railroad of property in corporate limits of town to be used for depot ground and railroad purposes in consideration of the expected enhancement in value of grantor's adjoining property, *held* to convey a fee and not merely an easement.

**11. DEEDS ☞95—CONSTRUCTION—LANGUAGE OF INSTRUMENT.**

To warrant a departure from the general rules of construction and to give deeds a meaning not fairly deducible from the language employed, the circumstances should be such as to impel the conclusion that the parties intended other than their expressed language would ordinarily imply.

**12. DEEDS ☞145 — CONSTRUCTION—"PROVISO"—"PROVIDED."**

The mere use of technical terms which ordinarily denote a limitation or a condition subsequent is an unsafe test of the true nature of the estate granted; the word "proviso" or "provided" itself being sometimes taken as a condition, sometimes as a limitation, and sometimes as a covenant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Provided; Proviso.]

**13. DEEDS ☞145 — CONSTRUCTION—LIMITATION—CONDITION.**

Language ordinarily importing a limitation or condition subsequent will be construed most strictly against grantor on the ground that law does not favor forfeitures.

**14. DEEDS ☞155 — CONSTRUCTION—LIMITATION—CONDITION.**

Where there is a doubt from the language of the entire instrument whether its fair construction imports a limitation which would absolutely determine the estate or a condition subsequent determining the estate only upon some act of the grantor tantamount to re-entry, the deed must be construed to import the latter as being in a sense less onerous upon the grantee.

**15. RAILROADS ☞72(7) — DEEDS—CONSTRUCTION—CONDITIONS SUBSEQUENT.**

Deeds by trustees to a railroad on condition that premises shall be used exclusively for railroad purposes, and that after they shall cease to be used for such purposes they shall revert to grantors or their "successors," naming a small consideration, the real consideration being expected enhancement in value of grantors' adjoining property, *held* to convey a fee upon condition subsequent, and not upon limitation, and railroad took an indefeasible title after grantors' sale of adjoining land.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by H. B. Stevens and others against the Galveston, Harrisburg & San Antonio Railway Company, in which W. W. Mills and others intervened. Judgment for defendant against plaintiffs and interveners. Affirmed as to plaintiffs and reformed and affirmed as to interveners by Court of Civil Appeals (169 S. W. 644), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

Williams & Neethe, of Galveston, and Coldwell & Sweeney, of El Paso, for interveners.

Baker, Botts, Parker & Garwood, of Houston, and Beall, Kemp & Nagle, of El Paso, for defendant in error.

McCLENDON, J. This suit involves the proper construction of three deeds, executed, respectively, on January 25, 1881, June 8, 1881, and April 9, 1881. The conclusions we have reached do not require a full statement of all the issues presented in the several applications for writs of error. A more detailed statement will be found in the opinion of the Court of Civil Appeals, 169 S. W. 644.

In the deeds of January 25 and June 8, 1881, the grantors were Thomas T. Gantt and David Rankin, acting in their capacity as trustees under the will of Robert Campbell, deceased, joined in by Virginia J. Campbell and Hugh Campbell, Jr., cestuis que trustent. The grantee in the latter was the Galveston, Harrisburg & San Antonio Railway Company, and in the former, Charles Crocker, who conveyed to said railway company. The former of these deeds conveys to the grantee a tract of land in the city of El Paso, containing 21.4 acres. The habendum clause of this deed reads as follows:

"To have and to hold said real estate with all its appurtenances unto said Charles Crocker, his heirs and assigns forever.

"On condition, nevertheless, that said real estate shall be used exclusively for railroad depot grounds and railroad business purposes and that the freight and passenger depots to be built and used by said second party or his assigns shall be within two hundred and ninety-five (295) feet in a northerly or southerly direction from the center line of Main street and within three hundred and sixty-five (365) feet of the center line of Kansas street as said streets are shown on said map of Ansen Mills or that said freight and passenger depots shall be at any point easterly or westerly from the intersection of said 'Main street and Kansas street that said first and second parties, their successors or assigns may mutually agree upon and that if said premises shall cease wholly to be used for the purposes herein contained 'they shall revert to the grantors or their successors."

The deed of June 8, 1881, conveys, besides other property not involved, "the right of way for said company's railway through Main street extending to the easterly bound-

ary line of the lands of said parties of the first part"; also the northerly halves of blocks 3, 10, and 42, and the southerly halves of blocks 8, 9, and 43, in the city of El Paso:

"The said halves of said blocks 3, 10, 42, 8, 9 and 43, being the halves lying upon Main street, and extending back to a line running through the center of said blocks and parallel with Main street and including also all the right, title and interest in or claim to the rights of the said parties of the first part in to and over the streets included within the boundary of a line extending around the said halves of blocks. To have and to hold, all and singular, the premises, with all the rights, privileges, and appurtenances thereunto appertaining unto the said Galveston, Harrisburg & San Antonio Railway Company and its successors and assigns so long as the said land shall be used as a railroad right of way and if not so used shall revert to the grantors herein."

In the deed of April 9, 1881, W. W. Mills and J. P. Hague are the grantors, and said railway company the grantee. This deed conveys the 21.4 acres described in the deed of January 25, 1881, and immediately following the description reads as follows:

"The said tracts or parcels of land to be used for depot grounds and railway purposes, by said company on conditions set forth in deed of Thomas T. Gantt and David Rankin of Saint Louis, Missouri, trustees of the estate of Robert Campbell, to Charles Crocker, dated January 25, A. D. 1881, except that the freight and passenger depots therein named may be located three hundred and thirty (330) feet further northeastwardly from the center line of Kansas street. And in case the said parcels of land are not used by said railway company for passenger and freight depots and railway purposes, then in that case all the right, title and interest therein conveyed shall revert to and again be vested in the said parties of the first part; and if said railway company abandon the use of said land for said purposes, all buildings and fixtures erected thereon by said company shall be held part and parcel of said land and shall revert with the same to the said parties of the first part. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. And also all the estate, right, title, interest, property possession, claim and demand whatsoever as well in law as in equity of the said parties of the first part, of, in or to the above-described premises and every part and parcel thereof with the appurtenances. To have and to hold all and singular the above mentioned and described premises, together with the appurtenances unto the said party of the second part, its heirs and assigns forever, for the purposes and on the conditions above set forth."

The only consideration expressed in the deeds was $1, but the trial court found that the real consideration for the conveyances was the expected enhancement in value of

other property owned by the grantors at the time of the conveyances, by reason of the uses to be made of the property.

The plaintiffs, claiming under the deeds of January 25th and June 8th, as vendees through mesne conveyances from the grantors therein, brought this suit to recover of the railway company a three-fourths undivided interest in the property conveyed by said deeds, upon the ground of the alleged diversion of use of portions of the property to purposes inconsistent with the grants. Interveners, claiming as heirs at law of the grantors in the deed of April 9th, sought to recover a one-eighth undivided interest in the 21.4 acres for a like reason. The defendant, in addition to its defensive pleadings, sought affirmatively the removal of cloud from its title, claiming to own the land in fee simple.

The contentions of the respective parties may be briefly summarized as follows:

Plaintiffs and interveners contend: (1) That the deeds, being to a railway company and for railway purposes, must be construed as intending to pass only an easement, and not the fee to the property; (2) that if the deeds be construed as passing the fee, it was upon limitation, and not upon conditions subsequent; and upon failure to use the property for the purposes designated, the title of the grantee terminated and revested in the grantors, their heirs and assigns.

The defendant contends, on the other hand, that the deeds, properly construed, vested in the railway company a fee-simple title upon conditions subsequent, and that upon conveyance by the grantors of all the lands to be benefited by the conveyances their interest in the conditions of defeasance was forever lost.

We will consider these questions in the order named.

That only an easement is conveyed by the several deeds is sought to be supported by numerous decisions of our American courts construing deeds and contracts for deeds to railway companies, chiefly deeds conveying strips of ground cutting through larger tracts as railway rights of way. We have carefully examined the authorities upon this subject, and are unable to conclude therefrom that the deeds in question should be given the construction contended for by plaintiffs and interveners. The authorities cited and relied upon may be divided into several classes. In one class of cases, it seems to be held by the decided weight of authority that where the deed in the granting clause conveys a right of way only, the estate conveyed will be held to be an easement, and not a fee, although apt words to convey the fee are employed. Such is the holding in Right of Way Oil Co. v. Gladys City Oil Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342;

Railway v. Geisel, 119 Ind. 77, 21 N. E. 470; Railway v. Reynolds, 116 Ind. 356, 19 N. E. 141; Railway v. Coburn, 91 Ind. 557; Blakely v. Railway, 46 Neb. 272, 64 N. W. 972; Reichenbach v. Railway, 10 Wash. 357, 38 Pac. 1126.

To another class of cases belong those in which the grantee claims under a contract for a conveyance of lands for right of way or other railway purposes, with a covenant to convey the fee-simple title. In those cases it is generally held that—

"A contract to convey land for a particular use, or to a party having capacity to acquire a certain estate in land for a particular use, must of necessity carry the implication of such limitation upon the estate to be conveyed." Hill v. Railway, 32 Vt. 74; Lockwood v. Railway, 103 Fed. 243, 43 C. C. A. 202; Uhl v. Railway, 51 W. Va. 106, 41 S. E. 340.

A third class of cases is illustrated in Choteau v. Railway, 122 Mo. 375, 22 S. W. 458, 30 S. W. 299, where a deed absolute in form conveying city lots was held to convey only an easement, on the ground that, under the Constitution of the state, as construed by the Missouri courts, no greater estate could be acquired by the grantee.

The case which most strongly supports the contention of plaintiffs and interveners is that of Abercrombie v. Simmons, 71 Kan. 538, 81 Pac. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239. In that case there was a deed absolute in form, conveying a strip of land through a farm owned by the plaintiff. The facts in that case show that the railway company had already surveyed its line through the farm, and the deed was made with reference to the survey already made. The railroad was never built, and subsequently the railway company conveyed the land to a third party. It was held that the deed, when construed in the light of all the surrounding circumstances, conveyed an easement only. From the opinion we gather that the chief, if not controlling, considerations which induced this decision were that the property had already been surveyed as a railroad right of way, and the railroad company had the right to condemn, or acquire the right of way by agreement with the owner, and that the property so acquired consisted of a strip of land which cut in two the farm of the defendant. The court in that connection say:

"May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be obnoxious and menacing to the adjacent owners?"

In concluding its opinion the court say:

"Lands may be acquired by donation or by voluntary grant for aid in the building of railroads, and railroad companies may doubtless acquire lands for various uses in connection with railroad business that could not be taken by virtue of eminent domain, and as to these different rules may apply. It is intended to confine the decision to cases where the contract or conveyance shows that the land was sold and received for use as a right of way for a railroad."

The same conclusion was reached in Railway v. Aldridge, 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516.

[1] We do not think that the principles announced in any of the foregoing cases are applicable here. It is not the law in this state that a railway company can acquire only an easement in real property. The contrary was expressly held in Calcasieu Lumber Co. v. Harris, 77 Tex. 23, 13 S. W. 453. Under our statutes, a railway company may condemn property, not only for right of way purposes, but for other necessary uses. But it also has the right to acquire real estate without limitation or restriction in use; and, when so acquired, its title is as absolute as that of a private individual, at least in so far as concerns immunity from attack by any one except the state. The question, therefore, for our consideration is whether or not the deeds when properly construed convey a fee upon condition or limitation, or merely an easement in the property.

[2-4] In arriving at a proper solution of this question, we are required to resort to well-established general rules for construing instruments of this character.

"The first rule of exposition, which governs every other, is that contracts should be so interpreted as to give effect to the intention of the parties; and, while the words selected by the parties themselves as a symbol to denote their purpose are usually the primary source from which intention is drawn, and the best and surest guide to its discovery, yet being employed sometimes by designing persons to disguise rather than to express the true thought, and being liable to careless misuse or ignorant misapplication, it is always the duty of the court, in all cases where they are susceptible of different constructions, to take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted, for the purpose of ascertaining the true intent; for the intention of the parties is manifestly paramount to the manner chosen to effect it. The courts, therefore, may avail themselves of the same light which the parties enjoyed when the contract was executed, and may place themselves in the same situation as the parties who made it, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the things described; and if any of the terms used seem to contradict the manifest intention, as clearly indicated by the agreement as a whole, the intention must govern." Lockwood v. Railway, above.

The rules announced in the above quotation have been frequently applied in this state.

In Maddox v. Adair, 66 S. W. 811, the purpose to be accomplished, as shown by the real consideration for the deed, namely, the enhancement of other property by the erection of a school building on the property conveyed, was held to be controlling in determining the construction to be placed upon the language in the deed. In that case, Post v. Well, 115 N. Y. 361, 22 N. E. 145, 5 L. R. A. 422, 12 Am. St. Rep. 809, is cited with approval, and commented on as follows:

"It was ruled that the language of the deed, although importing a condition subsequent, should be considered as a covenant, in view of the fact that it was the evident intention of the grantor to protect his remaining property from depreciation in value by reason of the erection adjacent thereto of undesirable structures. Having parted with all his interest in both estates, he was no longer concerned in the condition, and it was held that no burden rested upon the title of the first purchaser. In this case, when Maddox disposed of his lots adjoining the lot in controversy, the purpose of the condition was satisfied, and he had no further interest in the continued maintenance of the school."

In Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985, the deed was by a railway company upon consideration of $5, conveying certain town lots. The grantee was C. M. Dubois, bishop of Galveston, and his successors in office, "for the use of the Roman Catholic Church." The habendum clause read:

"To have and to hold, all and singular, the premises above mentioned unto the said C. M. Dubois, bishop of Galveston, for the use aforesaid, and to his successors and assigns forever."

In holding that this deed passed a fee-simple title in trust, the court say:

"When the declared purpose for which the property shall be used is a matter that will inure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional than when, as in this case, the use is for the benefit of a special class of persons or of the public at large. In this case it does not appear that the maintenance of the church upon the lots was a matter specially advantageous to the railway company, who made the grant. Upon these propositions the authorities are numerous and in substantial accord."

It will thus be seen that in determining the character of the estate granted, the court took into consideration not merely the uses for which the property was designated in the conveyance, but the relation of the grantor to these uses.

[5, 6] The general principles announced in the foregoing quotations we think are well established by the great weight of authority.

[7-9] Other well-established rules of construction are thus expressed in Cartwright v. Trueblood, 90 Tex. 538, 39 S. W. 931:

"Every part of the deed must be given effect if it can be done, and when all of the parts are harmonized the largest estate that its terms will permit of will be conferred upon the grantee. * * * If the language cannot be harmonized, from which an ambiguity arises in the deed so that it is susceptible of two constructions, that interpretation will be adopted which is most favorable to the grantee."

[10, 11] By the fair application of these rules of construction to each of the deeds in question, we think the conclusion must be reached that the fee, and not merely an easement, was intended to be conveyed. Clearly, such would be true if the grantee were a private individual, and not a railway company. To warrant a departure from the general rules of construction, and give to the deeds a meaning not fairly deducible from the language employed by the parties, the circumstances should be such, in our opinion, as to impel the conclusion that the parties intended other than their expressed language would ordinarily imply. All the considerations in the cases cited for applying a different rule where the grantee is a railway company from that applied where the grantee is a natural person are wanting in this case. As found by the trial court, the circumstances surrounding those conveyances were that the grantors sought the enhancement in value of other lands owned by them in the vicinity of the land conveyed. There is not shown any attempt on the part of the railway company to acquire title to this property by eminent domain, or any intention to acquire it at all previous to the execution of the deeds. The thing conveyed was not a strip of land extending through a larger tract used as a whole for some particular purpose, but consisted of distinct parcels of ground in the corporate limits of a city. The considerations, therefore, which brought forth the decisions in the Abercrombie and similar cases are absent here, and we are not pointed to any circumstances which would lead us to conclude that the intention of the parties was other than the fair language of the conveyances would reasonably import, regardless of the fact that the grantee was a railway company.

Passing to the question whether the conveyance of the fee is upon limitation or condition subsequent, we have reached the conclusion that the latter construction must prevail. In arriving at this conclusion, we are guided in the main by the same considerations expressed above in passing upon the question first discussed.

The distinction between a conveyance upon limitation and upon condition subsequent is thus stated by Kent:

"Words of limitation mark the period which is to determine the estate; but words of condition render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arises before the determination of the estate, or completion of the period described by the limitation. The one specifies

the utmost time of continuance, and the other marks some event which, if it takes place in the course of that time, will defeat the estate. The material distinction between a condition and a limitation consists in this: That a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs. But it is in the nature of a limitation to determine the estate when the period of limitation arises without entry or claim." Wiederanders v. State, 64 Tex. 140.

Under the common law and the great weight of authority in our American courts, it is held that the reversionary interest of the grantor in a deed conveying a fee-simple estate upon condition subsequent is not assignable can only be enforced by the original grantor and those connected with him in blood, and determines upon an assignment of the right or subsequent deed to the property. It is earnestly urged by counsel for plaintiffs that this rule is not in force in Texas. The decision of this question, however, is rendered unnecessary by the conclusion we have reached as expressed below.

While the legal attributes of the two estates under consideration are well defined and clearly distinguished, difficulty often arises when construing particular instruments in determining whether they fall within one or the other class. In this question of construction the chief difficulty lies. Certain general principles have from time to time been laid down, but it is not always easy to apply these principles to the particular case.

[12] Aside from the general rules of construction above announced in passing upon the first question considered, it has been held that certain technical words denote a limitation, and certain other technical words denote a condition subsequent. But, as said by Mr. Washburn in his able work on Real Property (5th Ed. p. 26):

"It is apprehended that the mere use of any of these terms, ordinarily expressive of a condition or a limitation, would be an unsafe test of the true nature of the estate. The word 'proviso' or 'provided,' itself, may sometimes be taken as a condition, sometimes as a limitation, and sometimes as a covenant."

Effect to this rule was given in Maddox v. Adair, above, in commenting upon the New York Case.

[13] There is another rule generally applied in construing deeds where the language used may ordinarily import a limitation or condition subsequent, namely, that these provisions are strictly construed against the grantor, on the ground that the law does not favor forfeitures. In construing a contract to import a covenant, and not a condition subsequent, the Supreme Court, in South Texas Telephone Co. v. Huntington, 104 Tex. 350, 136 S. W. 1053, 138 S. W. 381, say:

"To constitute a condition subsequent from which a forfeiture may be declared because of a failure of its performance, the language must be clear and the condition must be created by express terms, or by clear implication, and it must be strictly construed. Southerland v. Railway, 3 Dutch, 13–20. If there be doubt as to the meaning of the language used in this instrument, then it must be construed to be a covenant, for the law will not permit a liberal construction to be placed upon its terms in order to cause a forfeiture of a right secured by the instrument. Woodruff v. Woodruff [44 N. J. Eq. 349, 16 Atl. 4] 1 L. R. A. 380; Railway v. Titterington, 84 Tex. 222 [19 S. W. 472, 31 Am. St. Rep. 39]." Moore v. Cross, 87 Tex. 557 [29 S. W. 1051].

[14] The rule there announced is generally supported by authority within and without this state. We think a correct application to be that where there is a doubt from the language of the entire instrument whether its fair construction imports a limitation which would absolutely determine the estate, or a condition subsequent determining the estate only upon some act of the grantor tantamount to a re-entry, the deed must be construed to import the latter as being in a sense less onerous upon the grantee. This conclusion, we think, is in harmony also with the rule that the greatest estate of which the language of the deed is susceptible of conveying will be held to have been intended by the parties, because, although both estates are generally regarded as fees, the former determines absolutely upon the happening of the condition, and is, therefore, more circumscribed than the latter, which requires some act on the part of the grantor for its determination, in addition to the breach of the condition.

To our mind, there is little doubt as to the effect of the deeds of January 25th and April 9th. There is nothing in the language of these deeds which would reasonably imply a limitation. The language used is, we believe, that ordinarily employed in deeds construed to be upon condition subsequent. It is contended by plaintiffs and interveners that the words in the deed of January 25th reading, "If said promises shall cease wholly to be used for the purposes herein contained, they shall revert to the grantors or *their successors*" (underscoring ours), import a limitation, in that the fair construction of said language is that the estate should determine ipso facto when the properties should cease to be so used. We do not think this is a fair construction of this language. On the contrary, we find practically the same language used in deeds construed to import only a condition subsequent. Maddox v. Adair, above; Jeffery v. Graham, 61 Tex. 481.

Nor do we think any special significance should be attached to the word "successors" underscored in the above quotation. The grantors were trustees of the property, acting at the instance of the cestuis que trustent, and in their trust capacity. The word "successors," when used in reference to trustees, ordinarily implies their successors in trust,

and we think should be given that meaning in construing this instrument. There is nothing in the context requiring that it be given a broader meaning.

More difficulty arises in construing the deed of June 8th. The granting clause in that deed without question purports to convey an absolute fee-simple title. The first part of the habendum clause, namely, "so long as said land shall be used as a railroad right of way," is in the technical language of a limitation; but this is immediately followed by this language, "and if not so used shall revert to the grantors herein." The latter quotation, as we have seen, is the language usually employed to express the grantor's right of re-entry upon a condition subsequent broken.

[15] Having in mind all the foregoing considerations, we think the proper construction of each of the three deeds, when viewed in the light of the surrounding circumstances, and the purposes sought to be attained, is that they convey upon condition subsequent, and not upon limitation. To give them this construction, to our mind, reasonably harmonizes all the terms of all the deeds, and gives to the grantors that which they bargained for, as found by the trial court.

Having reached the above conclusions, the disposition to be made of the case, in our opinion, is controlled by the decision in Maddox v. Adair. In that case Maddox conveyed to certain school trustees a tract of land by deed in the usual form, except that it contained the following clause:

"But should the said land fail to be used for the purposes for which it is sold, viz., the establishment and maintenance of a first-class seminary of learning thereon, then it shall revert to me, the said J. W. Maddox."

The recited consideration in the deed was $100 cash; but the evidence showed that the real consideration was the expected enhancement in value to adjacent property owned by Maddox, as a result of the establishment of the school provided for. After the school was established, Maddox sold all of his adjacent property. The school was later abandoned, and Maddox sued to recover the property conveyed. The court in that case say:

"In ascertaining the intention it is proper to look to the circumstances surrounding the transaction. Railway v. Beller [90] Tenn. [548] 18 S. W. 391. Maddox desired the school to be used in order that the value of his property might be increased. This was the consideration for the conveyance, and he had no interest in having the school maintained for any other purpose. * * * When he sold his adjacent lots he ceased to be concerned in the continuance of the school, and the purpose of the condition was accomplished. This construction is also in harmony with the language of the condition."

The Supreme Court refused a writ of error in that case, and we think the decision therein is controlling here. The grantors in the several deeds do not appear to have had any interest whatsoever in the conditions expressed in the several deeds, other than the enhancement in value of their other property through compliance with such conditions. The trial court found that they had conveyed all their other property which was expected to be benefited, from which it conclusively appears that their interest in a further compliance with the conditions had determined.

Having reached the foregoing conclusions, the other questions raised by plaintiffs and interveners become immaterial.

We conclude that the railway company has an indefeasible fee-simple title to the property involved in this suit, and that the judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.