**PLSEK et al. v. KOSTROUN et al.
(No. 7219.)**

Court of Civil Appeals of Texas. Austin.
May 2, 1928.

Rehearing Denied May 23, 1928.

1. **Wills ⟨key⟩449—Will held to eliminate from distribution thereunder community property of testator's deceased wife, and to leave her estate to vest unaffected thereby.**

Section of will stating, "It is my intention to dispose of all property which may belong to me personally by this last will and testament, but I have not intended nor attempted and do not here now intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property," held to eliminate from property to be distributed under the will the community property of testator's deceased wife, and to leave her estate to vest unaffected

by the will just as though no will had been made, where to construe the will otherwise would make will show testator's preference of children, and would render it supererogatory.

2. **Wills ⟨key⟩488—Evidence of circumstances attending testator and objects of bounty and condition and character of estate is admissible to ascertain intention ambiguously expressed, but not to vary terms.**

In the construction of wills, evidence of the circumstances attending the testator and the objects of his bounty, and of the condition and character of the estate, is admissible to throw light on the will, so as to get at the intention of the testator ambiguously expressed, but not to vary the terms themselves of the will.

3. **Wills ⟨key⟩453—Presumption is that parent will treat all children equally in disposition of estate.**

In construing wills, it is a natural presumption that a parent will treat all of his children equally in the distribution of his estate, where no reason for an unequal division is apparent.

4. **Wills ⟨key⟩453—Presumption that parent will treat children equally will not be indulged where language of will is clear, but may be resorted to where not conclusive.**

The presumption that a parent will treat all of his children equally in the distribution of his estate will not be indulged where the language of the will is clear; but, where the intention of the testator is sought and the language used is not conclusive, it may be resorted to as an aid to interpretation.

5. **Infants ⟨key⟩116—In suit to construe will and for partition, fee of minors' attorney ad litem held taxable against their interest.**

In suit to construe will and for partition of estate brought against defendants, including minors, held that fee of attorney ad litem for minors should be taxed against the interest of the minors whom attorney ad litem represented.

6. **Partition ⟨key⟩14—Denial of partition held proper, where estate owed debts, and was being administered by independent executor.**

In suit to construe a will and for partition of the testator's estate, court's denial of partition held proper, where evidence indicated there were debts owing by the estate, and it was being administered by the independent executor.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by Mary Plsek and others against John Kostroun and others for the construction of the will of Anton Kostroun, deceased, and for partition of his estate. From the judgment, plaintiffs appeal. Reversed and rendered in part, and remanded in part for further proceedings.

E. A. Wallace and B. P. Matocha, both of Cameron, for appellants.
W. A. Morrison, of Cameron, for appellees.

McCLENDON, C. J. The suit is to construe the will of Anton Kostroun and for partition of his estate. It grew out of the follow-

---

ing facts: Anton and Emily Kostroun were husband and wife. Emily died in 1916, intestate. Her sole heirs were the five surviving children of the marriage, William, John, and Joseph Kostroun, Mary Plsek (wife of Joe Plsek) and Agnes Slavik (wife of Joe Slavik). All property of the spouses was community and consisted of 138 acres of land in Milam county, worth, according to the only testimony in the record, approximately $90 an acre, or $13,420 at the time of Emily's death, and personal property of the gross value of about $15,000. Whether there were community debts was not shown. In December, 1917, Mary Plsek and Agnes Slavik, their respective husbands joining, assigned to Anton Kostroun, in the form of warranty deeds, each for the recited consideration of $800 cash, their respective interests, real and personal, in their mother's estate. The grantors contended that these instruments by mistake covered the real estate, when, in fact, it was the intention only to release their inherited interest in the community personalty, and there was some evidence to support this contention. In November, 1919, for a like consideration and in like manner John Kostroun assigned his interest in his mother's estate, real and personal, to Anton Kostroun. On April 5, 1920, Anton Kostroun paid a note of his son-in-law, Joe Slavik, amounting to $1,170.10, and on the same day made his will, sections 4, 5, and 6 of which control the controversy in the case. By the first three sections the will provided that his just debts be paid; that certain directions regarding his burial be observed, including the erection of a monument at his grave "in a manner consistent with my financial circumstances and with my station in life"; and that $300 be paid to an orphan girl reared in his family. Sections 4, 5, and 6 read:

"4. It is my will and desire that the residue of my estate real, personal and mixed, after the payment of my debts, funeral expenses and monument, and the legacy to the orphan child, Ludmilla, hereinbefore mentioned, shall be divided equally between my beloved children, Joseph Kostroun, William Kostroun, Mary Plsek and John Kostroun, share and share alike.

"5. It is my will and desire that my daughter Agnes Slavik receive nothing in the disposition of my estate, since I have paid her, the said Agnes Slavik, her full share in cash, said amount being $1,170.10 paid for her and her husband to Joseph Kuchta, April 5th, A. D. 1920.

"6. It is my intention to dispose of all property which may belong to me personally by this last will and testament, but I have not intended nor attempted and do not here now intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property."

The remaining sections nominate, first, Joseph Kostroun, and in the alternative, John Kostroun, as independent executor without bond. On January 22, 1924, Joseph Kostroun assigned to Anton Kostroun for a recited consideration of $800 cash his title and interest in his mother's estate, "hereby accepting said sum of money as full and final settlement as the part and share of my mother's estate." Joseph Kostroun died intestate prior to the death of his father, leaving as his sole heirs at law six children, all of whom were minors. Anton Kostroun died in January, 1927; his will was probated, and John Kostroun qualified as independent executor. There was testimony that he owed two banks, but the amount is not shown.

This suit was brought by Mary Plsek and Agnes Slavik, their husbands joining, against their two brothers and the six children of their deceased brother, all individually, and against John Kostroun as executor, praying for a construction of the will and partition of the estate. The children of Joseph Kostroun were represented by an attorney ad litem. The case was tried to a jury and judgment under a directed verdict rendered, construing the will as depriving Agnes Slavik of any interest in the estate of either Anton or Emily Kostroun, and fixing the respective interests of the remaining parties as follows: William Kostroun $13/40$; John Kostroun and Mary Plsek each $9/40$; and the six children of Joseph Kostroun each $1/6$ of $9/40$, or $3/80$. All other relief prayed for was denied. A fee of $75 was allowed the attorney ad litem for the minor defendants, and this was taxed as costs against the plaintiffs. The latter have appealed.

The appellees contend and the trial court evidently took the view that paragraph 6 of the will evidences an intention of Anton Kostroun not to affect the title which any of his children might have at the time of his death in the community estate of their mother, and that such parts of her community estate as had been conveyed to him by his several children should pass under section 4 to his four named devisees therein as a part of his "estate, real, personal and mixed." Under this construction the community half of Anton Kostroun and the $4/5$ interest in the community half of his wife acquired from the four children was decreed to be in the four named devisees, and William Kostroun's inherited interest in his mother's estate was ratified and recognized.

[1] In this we do not concur, but construe section 6 of the will to eliminate therefrom the community property of Emily Kostroun and leave her estate to vest unaffected by the will, just as though no will had been made. This is the clear import of the language used, and we find nothing in the record to indicate a contrary intention in the testator; while supporting it are the following considerations, which accord with the well-established canons for construing such instruments:

Anton Kostroun appears to have been conversant with the community property law, and to have known that his wife owned a

half interest in the estate which passed at her death to the five children. This is clear from the fact that when the will was executed he had already settled with three of the children for their interest. With this knowledge he would hardly have set aside a separate paragraph of the will to particularize exactly what he was devising and no more and used the language, "I have not intended nor attempted and do not here now intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property," if he had only intended thereby to recognize his wife's community estate. This language makes no reference to any particular portion of his wife's estate, $\frac{2}{5}$ of which was then outstanding in two of his children and $\frac{3}{5}$ in himself by purchase from the others. His wife's estate is referred to as a whole; there had been no attempt to dispose of any property not his own in the previous provisions of the will; there was no necessity for a mere recognition of his wife's estate, as that had been done in the three settlements he had made; and, if section 6 be construed as in the court below, it was entirely unnecessary, and neither added to nor took from the other provisions, all of which were plain, simple, and unambiguous.

[2] Had there been no previous recognition of the wife's community estate and no assignment of any child's interest therein to the testator, there might be some ground for a contrary view. But in the construction of wills, as of other written instruments, "evidence of the circumstances attending the testator and the objects of his bounty, and of the condition and character of the estate, is admissible to throw light upon the will, so as to get at the intention of the testator ambiguously expressed, but not to vary the terms themselves of the will." Lenz v. Sens, 27 Tex. Civ. App. 442, 66 S. W. 110, and authorities there cited. See, also, Stevens v. Ry. (Tex. Com. App.) 212 S. W. 642 (2–4), quoting with approval the following from Lockwood v. Ry. (C. C. A.) 103 F. 243:

"The courts, therefore, may avail themselves of the same light which the parties enjoyed when the contract was executed, and may place themselves in the same situation as the parties who made it, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the things described; and if any of the terms used seem to contradict the manifest intention, as clearly indicated by the agreement as a whole, the intention must govern."

[3, 4] Again: It is a natural presumption that a parent will treat all of his children equally in the disposition of his estate, where no reason for an unequal division is apparent. This presumption will not be indulged where the language is clear; but where intention of the testator is sought, and the language used is not conclusive, it may be resorted to as

an aid to interpretation. Nothing in the record suggests that the testator had any particular preference for any of his children, other than as may be evidenced by naming, first, Joseph, and in the alternative, John, as executor. At the time the will was made the two daughters and John had assigned him their interest in their mother's estate. On the same day he settled with Agnes for her interest in his own estate. If the will be construed to eliminate Agnes from any share in her mother's estate which her father had acquired, then the will showed a preference in favor of Mary and John over Agnes, for, in addition to the share which they received from their father's interest in the community, they were also given each $\frac{1}{4}$ of the three shares that had been conveyed to him. The subsequent acquisition of the share of Joseph created a like preference under the will in favor of Joseph over Agnes. In other words, the construction which the trial court and appellees give to the will creates a discrimination against one of the daughters, where no basis in the record is shown for such discrimination, and also renders section 6 of the will supererogatory.

The fact that up to the time of the making of the will Anton Kostroun had settled with three of his children as to their interest in their mother's estate, and thereafter settled with a fourth, indicates that he probably had in mind settling with all of them, each on the basis of $800 cash, and that, having settled with Agnes additionally for her interest or expectancy in his half of the community, he devised that interest in equal shares to his four remaining children, expressly stipulating:

"I have not intended nor attempted and do not here now intend or attempt to dispose of the community estate or interest of my deceased wife in and to said property."

This language seems to us to be clear and unequivocal. It excludes in express language from all provisions of the will the interest of the deceased wife in the community property. That interest is taken as a whole; no part of it is referred to. If the testator had intended to devise as a part of his own estate the interest in his wife's estate which he had already acquired or might thereafter acquire from his children, apt language, we think, would have been employed to express such intention. The language "community estate or interest of my deceased wife in and to said property" clearly imports all of the interest his wife had in the property at the time of her death. To give it a different construction would, we believe, be counter to the literal, plain, and ordinary meaning of the language used and at the same time would render section 6 meaningless or useless and ascribe to the testator an intention to discriminate against one of his daughters in favor of his other daughter and three sons.

As we construe the language of the will, the community interest of Anton Kostroun is devised ¼ each to his children, Joseph, William, Mary, and John, and the interest he acquired in his wife's community estate was left undisposed of. Under this construction title to the joint estate should vest as follows:

In William Kostroun $\frac{1}{10}$ plus $\frac{1}{8}$ plus $\frac{1}{5}$ of $\frac{4}{10}$, or $\frac{61}{200}$.

In John and Mary, each, $\frac{1}{8}$ plus $\frac{1}{5}$ of $\frac{4}{10}$, or $\frac{41}{200}$.

In the children of Joseph $\frac{1}{8}$ plus $\frac{1}{5}$ of $\frac{4}{10}$, or $\frac{41}{200}$, jointly.

In Agnes $\frac{1}{5}$ of $\frac{4}{10}$, or $\frac{16}{200}$.

This holding we think renders unnecessary consideration of other questions raised in the appeal, other than that of costs hereafter noted. We have some doubt of the sufficiency of the pleading to warrant setting aside the assignments by Mary Plsek and Agnes Slavik to their father. If these assignments should be set aside, it would be necessary to set aside those to John and Joseph and to account for the consideration they all received. If these instruments are set aside, each would receive $\frac{1}{10}$ of the entire community estate by inheritance from the mother. Under our construction of the will each receives out of the mother's estate $\frac{16}{200}$, or 8 per cent., the difference amounting to only 2 per cent. of the entire property. This clearly is much less than the $800 for which each would have to account in order to set the instruments aside. Since we are remanding the cause, the questions relating to the prayer for rescission of these assignments may not again arise, and we express no further opinion in that regard.

[5] The fee of the attorney ad litem should be taxed against the interest of the minors he represents.

[6] As the evidence indicates there were debts owing by the estate and it was being administered by the independent executor, the trial court correctly denied partition. The right of the parties to a partition upon remand of the cause will depend upon the condition of the estate at that time.

The judgment of the trial court is reversed and judgment is here rendered, construing the will of Anton Kostroun to devise to his four named devisees each a ¼ interest in his half of the community property, leaving the balance of the community property which he acquired by transfers from four of his children undisposed of and vesting by the law of descent and distribution $\frac{1}{5}$ each in his four surviving children and $\frac{1}{5}$ in equal shares to the six children of his deceased son, Joseph. The fee of the attorney ad litem for the minor defendants is taxed against said minors' interest in the estate, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and rendered in part, and in part remanded.