CITY OF KNOXVILLE *v.* G. H. KAISER.

(*Knoxville.* September Term, 1930.)

Opinion filed December 15, 1930.

DONALDSON & MONTGOMERY and W. H. PETERS, JR., for plaintiff in error.

POWERS & THORNBURG, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action to recover damages alleged to have been caused by the closing of McGhee Street in the City of Knoxville by ordinance of the City, whereby, as con-

tended by the plaintiff below, petitioner here, his right of ingress and egress to and from a piece of ground belonging to the Southern Railway, in which petitioner claimed an interest as lessee or licensee by contract with the Railway, was impaired. Pending the litigation the question of the amount of damages, if any, was submitted to arbitration under a stipulation that the award of the arbitrators should be conclusive as to the amount of damage, if as a matter of law there was any liability on the part of the city for any amount.

The arbitrators made an award, finding that the petitioner, Kaiser, was entitled to the sum of $5,000 as damages sustained on account of the closing of the street in question, and judgment was entered in the Circuit Court on this award.

The City appealed, assigning errors of law, and the Court of Appeals reversed the judgment and dismissed the suit. The petition of Kaiser for *certiorari* has been granted and argument heard.

The lease, entered into in September, 1900, is from the Southern Railway to the firm of Kaiser Brothers, at that time composed of the petitioner, G. H. Kaiser and his brother, H. O. Kaiser, and the term stipulated is:

"For the full term of one (1) year from the 20th day of August, 1900; that is to say, until the 20th day of August which will appear in the year 1901; and thereafter, until either party hereto shall have served upon the other thirty (30) days' notice, in writing of the election to terminate this agreement."

Under this lease the lessee took possession and made considerable improvements, erecting a warehouse and cold storage plant, and carrying on a wholesale fruit and produce business. The amount of rental fixed in the con-

tract was $180 per annum; but the record seems to indicate that some years later, there having been a revaluation of the properties of the Railway Company, this rental was increased. It thus appears that the lessee had held possession under this lease for some twenty-seven years to the time this suit was brought, and in as much as the business carried on by the lessee in connection with the leased property seems to have been productive of satisfactory returns, both to the lessee and in freight to the lessor, the conditions indicated that the lease would probably have continued for an indefinite term. It is shown that during the year 1927, and for each of the three years immediately preceding, the freight revenue paid by the lessee to the lessor was upwards of $70,000.

By agreement between the City of Knoxville and the Railway for the construction of a viaduct over the railway tracks on Gay Street, McGhee Street, on which the property leased fronted, was closed, and it was the closing of this street which, as the petitioner contends, caused the damage on which the suit was based.

This contract between the City and the Railway was considered at length by this court in the case of *Knoxville, I. & C. S. Co.* v. *City of Knoxville,* 153 Tenn., 536. In that case, after holding that the contract was valid and that the city had authority to close McGhee Street as agreed, the Court commented on the fact that no part of the property of the complainant therein would be taken by the closing of McGhee Street, and the only damages which the complainants would suffer as a consequence of the closing of the street was an impairment of their easement in the street, and with respect to this the court said:

"There can be no question but that if, in closing Mc-Ghee Street, complainants' legal rights are invaded they will have a full and adequate remedy at law, and if judgment be obtained against the city the council can be compelled to levy a tax to provide for its payment."

The Court of Appeals has found that the lease, if valid, vested in the lessee an estate in the land, for damages to which, under the authority of *Railway Co.* v. *Moriarty*, 135 Tenn., 446, the plaintiff would be entitled to recover; and that under the agreement of submission to arbitration the amount of damage, if any, was conclusively fixed by the award of the arbitrators. That Court, however, reversed the judgment holding, (a) that the Railroad's lease to Kaiser of a location on its right of way was beyond the power of this public service corporation, in that the Railroad Company was without authority to alienate to any extent its right of property or possession in its right of way in favor of any private individual, to be used for private purposes; and (b) that the granting of this license or privilege in part consideration of freight business was a contract void as against public policy. Reaching this conclusion the Court of Appeals found that the leasehold under which Kaiser claims was without value, and that no damages could therefore be recovered by him for an impairment thereof.

The lease in question contained a stipulation to the effect that the lessee would ship over the lines of the Railway Company and its connections all freight used in and about the business of the lessee, provided the rates afforded the lessee by the Railway Company were not in excess of those of competing carriers for similar services performed under substantially similar circumstances and conditions. It can be legitimately inferred from the lease

and surrounding circumstances that the Railway desired to encourage the location on the leased property of an industry which would furnish freight business to the Railway and thereby increase its revenues. The lessee, as stated, has expended considerable money in the construction and development of its plant and facilities and apparently the operations under the lease have been satisfactory to both parties. There is no contention that the plaintiff was in fact given any preference in rates, or that the lease to the plaintiff of the land embraced therein in any way hampered the Railway in the discharge of its duties as a public carrier. The Court of Appeals expresses the opinion, however, that the low or nominal rental charged by the Railway for the lease of the property is sufficient to "raise a suspicion" that there were other considerations passing for the lease than the nominal sum that was to be paid as rental therefor. The Court also quotes in this connection an averment from the declaration to the effect that petitioner had an understanding with the Railway that he would give the Railway preference in his freight shipments "on account of said lease and the low rental price thereof; the Southern Railway not leasing the premises on current rental values, but for the production of freight shipments and from the standpoint of revenue which can be obtained for its road."

The Court of Appeals bases its reversal very largely on an opinion of the United States Circuit Court of Appeals for the 6th Circuit, in *Cleveland, etc., Ry. Co.* v. *Hirsch,* 204 Fed., 847. In that case, disposed of on demurrer, the Railroad Company sought to repudiate a contract for a term of twenty years,—a degree of permanency in alienation which well might be held to sub-

ject it to objection. Moreover, the Court found an "understanding that the reduced rental was in fact a concession on freight rates," which was held invalid under the Interstate Commerce Act, and also certain Ohio statutes, as to intrastate shipments. In the case cited of *U. S.* v. *Union Stock Yard & T. Co.*, 226 U. S., 286, 57 L. Ed., 226, not only was the arrangement for a fifteen year period and for a fixed bonus of $50,000, but various elements of actual discrimination and rebate were found. While points of similarity appear, both of these cases are distinguishable from the case at bar in important particulars indicated by the foregoing references thereto.

Counsel for the City cite *Railroad* v. *Tel. Co.*, 101 Tenn., at page 68, for the proposition that a railway company is without power to lease part of its right of way for any stated period of time. Mr. Justice WILKES in that case was dealing with, "the interest or estate which a railroad company acquires in land over which its right of way extends, when they are acquired *under condemnation proceedings.*" Without deciding whether or not his comments apply alike to lands acquired by purchase in fee simple, it is to be observed that the limitation he announces of this power to alienate is not absolute, but clearly recognizes exceptions. He says: "It cannot sell, transfer, incumber or use its right of way *except as its necessities and convenience may demand,*" etc. Again, "It cannot license the appropriation of any part of such right of way to private business purposes nor to public purposes *except so far as needful and helpful to the operation of the road itself.*" We italicize significant language. In the case at bar the insistence is that the lease,—subject as it was to cancellation upon short notice whenever the requirements of the railroad for its

more direct purposes should so demand,—was a mutually advantageous one, reasonably calculated to yield additional freight for hauling by the railroad Company, thus making remunerative a portion of its lands which otherwise would have been a burden, at least to the extent of the taxes thereon. Indeed, the theory that the lease contravenes public policy in that the consideration for it was, in part, freight shipments, involves recognition that the use of it contracted for was in pursuance of railroad purposes.

The authorities quite generally recognize power in a railroad company to grant the use for a term of a portion of its right of way or other lands, when the purposes are not inconsistent with its charter, or contrary to public policy. This is the substance of the text in 33 Cyc., page 190 and is sustained by cases cited in the notes.

In Elliott on Railroads, Vol. 2 (2 Ed.), Sec. 938, B. P., 435, it is said: "So, it has been held, that a Railroad Company may lease a portion of its right of way for business purposes with a view to securing freight. Such a contract, it was held, is not opposed to public policy." It will be observed that in this paragraph the learned author deals with both propositions relied on by the Court of Appeals in this case. He cites *City of Detroit* v. *C. H. Little Co.*, 146 Mich., 373. In that case a head note reads, "A lease by a Railroad Company of a portion of its right of way to a dealer in heavy articles of merchandise, made with a view to increasing shipments, is not against public policy." However, in the body of the opinion in that case there is no discussion of this proposition. The Court contented itself, in responding to the insistence of counsel that "the lease was against public policy, invalid, and respondent could obtain no rights under it," by saying,

"this point is disposed of by *Michigan Central R. R. Co. v. Bullard,* 120 Mich., 416."

Turning to the Bullard case, we find the proposition thus directly dealt with. "A number of questions are raised,—among others the right of the Company to lease any portion of its right of way. The lease in question was made subject to termination on sixty days' notice, and was made to a manufacturing company with a view to affording facilities for furnishing freight to the Company. Such a lease is not invalid." The Court cites the following cases: *Grand Trunk R. R. Co.* v. *Richardson,* 91 U. S., 454, 23 L. Ed., 357; *Ill. Cent. R. Co.* v. *Wathen,* 17 Ill. App., 582; *Gurney* v. *Elevator Co.,* 63 Minn., 70; *Roby* v. *R. Co.,* 142 N. Y., 176.

Mr Justice Strong in the course of his opinion in *Grand Trunk R. R. Co.* v. *Richardson, supra,* recognizes what we conceive to be the proper distinction, which we are constrained to hold that the learned Court of Appeals has overlooked, saying that, "while it must be admitted that a Railroad Company has the exclusive control of all the land within the lines of its right of way, and is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted, we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may also be for the convenience of others." The Court holds that the Railroad might have erected similar structures itself on the ground used and says that, "if the Company might have put up the buildings, why might it not license others to do the same thing for the same object, namely: The increase of its facilities for the receipt and delivery of freight? The public is not injured, and it has no right to complain, so long as a free

and safe passage is left for the carriage of freight and passengers." In that case Richardson had erected a saw mill and machinery, lumber shed, store, boarding house, etc., partly on the right of way of the Railroad Company, and had paid a nominal rent of $1 a year to the Railroad Company for the privilege. In that suit recovery was sought and allowed by these lessees against the Railroad Company for negligently burning one of these buildings on the right of way. The Court found that the buildings were rightfully there under permission from the Railroad Company and expressly repudiated the insistence that the lease or license was void.

Mr. Justice GRAY, in his opinion in *Hartford Fire Insurance Co.* v. *Chicago, M. & St. P. R. Co.,* 157 U. S., 91, 44 L. Ed., 84, makes this clear statement of the rule, citing the Grand Trunk case, *supra,* for support:

"A railroad corporation holds its station grounds, railroad tracks, and right of way for the public use for which it is incorporated, yet as its private property, and to be occupied by itself or by others in the manner which it may consider best fitted to promote, or not to interfere with, the public use. It may, in its discretion, permit them to be occupied by others with structures convenient for the receiving and delivering of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers."

Mr. Justice GRAY says further: "The case is wholly different from those cited by the plaintiffs, in which a lease by a railroad corporation, transferring its entire property and franchises to another corporation, and thus undertaking to disable itself from performing all the duties to the public imposed upon it by its charter, had been held to be *ultra vires,* and therefore void—as in

*Thomas* v. *West Jersey R. Co.*, 101 U. S., 71, 25 L. Ed., 950, and'' other cases.

In that case the Railroad Company had made a lease for one year, and thereafter at will, at a nominal rental of $5 a year, of a portion of its right of way for the purpose of erecting and maintaining thereon a cold storage warehouse, etc. While the principal attack was based on a provision exempting the Railroad Company from liability in case of fire caused by its own negligence, the incidental pronouncements of the Court above quoted are much in point here.

In the course of the same opinion this general statement of the public policy rule is approved. ''The authorities all agree that a contract is not void as against public policy, unless it is injurious to the interests of the public, or contravenes some established interest of society.''

Referring again to the case of *City of Detroit* v. *Little, supra,* it appears that this case went twice to the Supreme Court of Michigan, being first reported in 141 Mich., 637, wherein the facts are more fully set forth, and the Court dealt directly with the right of lessees from the Railroad Company, holding under a lease renewable from year to year, and having erected buildings for the handling of various supplies and machinery, such as warehouses and stables, to recover against the City of Detroit for damages because of a change of the street grades. In that case, as in this, the amount of the damage appears to have been practically agreed upon, but the insistence was, as it is here, that there could be no recovery of any amount on the ground, among others, that the tenant was cut off by the agreement between the City and the Railroad Company from damages. The Court said that, ''it

has been repeatedly held that a tenant's term is property. See *Allison* v. *Chandler,* 11 Mich., 542, and the cases there cited.'' In that case the lease provided that it might be terminated by the lessor at any time upon sixty days' notice, and further provided that the lands leased should be held ''by said second party for the purpose only of receiving, storing, handling and shipping sewer pipe, cement or other freight coming to or shipped by the said second party over the railway of the said first party.'' In effect, the Court held that this lessee was entitled to damages, but finding that the record was not clear as to the amount of damages, the case was reversed and sent back for a new trial on that issue.

This question of the amount of damages, as before stated, is not before this Court in the instant case. If Kaiser is entitled to recover any sum whatever by way of damages, then he is entitled to recover the amount of the award fixed by the arbitrators below.

A leading case directly sustaining the power of a railroad company to lease a portion of its right of way for business purposes with a view to securing freight and sustaining the view that such a contract is not opposed to public policy is that of *Anderson* v. *Interstate Mfg. Co.,* 152 Ia., 455; 36 L. R. A. (N. S.), —. Following the report of this case will be found an exhaustive note citing many authorities to the same effect. As justifying the right of the Railroad to make the lease to this warehouse company, the Court puts emphasis upon the fact that the Railroad by this means secured very large shipments of freight.

In 22 R. C. L., at p. 866, the power of railroad companies to make such use of portions of their right of way

is said to be generally recognized and numerous illustrations are given and supporting cases cited.

We think it clear on the authorities we have referred to that such a lease was within the power of the Railroad Company to make. It appears, at least inferentially in this record, that the Railroad Company had considerable 'ground in connection with its right of' way that it had no call to use for trackage, or other direct railroad purposes, and that it had from time to time made numerous leases to various parties of a portion of such lands with the purpose of building up its freight business. It is also a matter of common knowledge that it is customary for railroad companies in the various cities and towns of this State to pursue a similar practice or custom. There is no evidence that other proposed shippers desired to use or share this location, or that like privileges were not obtainable by others. The fact that the rental stipulated for was nominal and that it appears that the main inducement on the part of the Railroad Company was the procuring of freight for shipment over its lines, would seem rather to support the rightfulness of the action of the railroad in making the lease than otherwise. This justified the use which it thus made of its otherwise unused and unrequired lands. Furthermore, the Railroad Company expressly reserved a right of cancellation on short notice, which preserved to the Company the power to convert the lands to other and more direct railroad uses as and when its necessities should so demand. In this important respect, among others, this lease contract differs from those before the Federal Courts in the Hirsch and Stock Yards cases, *supra,* wherein the contracts ran for long fixed periods.

■ It does not appear that the Railroad Company ever gave to this lessee any advantage in the matter of rates, and we are unable to see that the inducement offered by the Railroad in furnishing to this large shipper facilities for shipping freight over its lines was the giving of a rebate in any sense objectionable under the statutes of the State or Federal Government, and we are unable to agree with the learned Court of Appeals that the arrangement was in contravention of public policy in any such sense as to render the contract void.

■ Counsel raise on their brief an additional question, that the lease not having been registered could not be relied on as against the City, a third party. In the first place, this lease was not originally for the length of time to which our statutes requiring registration have application; and, in the second place, it was, and had for years been subject to thirty days' notice of cancellation. Moreover, the actual and open possession and occupancy of the lessee carried ample notice to the City.

The judgment of the Court of Appeals is reversed and the judgment of the trial court affirmed.