**RIO BRAVO OIL COMPANY et al.,**
**Petitioners,**

**v.**

**HUNT PETROLEUM CORPORATION**
**et al., Respondents.**

**No. B–1574.**

Supreme Court of Texas.

June 10, 1970.

Rehearing Denied July 22, 1970.

Life & Bolding, Jack T. Life, Athens, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Robert J. Hearon, Jr., William L. Garwood and W. St. John Garwood, Austin, Knight, Prappas, Rowland & Caldwell, W. J. Knight, Houston, for petitioners.

Prentice Wilson, Dallas, Smith & Smith, Kelly Smith, Ramey, Brelsford, Flock, Devereux & Hutchins, Tom B. Ramey, Jr., and Frank L. McClendon, Tyler, Shank, Irwin, Conant & Williamson, Ralph B. Shank, Dallas, for respondents.

HAMILTON, Justice.

Plaintiffs, Rio Bravo Oil Company and Southern Pacific Company, brought this trespass to try title suit claiming to own fee simple title to 25.042 acres of land and the mineral estate thereunder. Plaintiffs claim title under a 1901 instrument executed by Mr. & Mrs. J. L. Dickerson to the Texas and New Orleans Railroad Company. Alternatively, plaintiffs claim title by limitations. Plaintiffs and defendants both filed Motions for Summary Judgment. The trial court overruled plaintiffs' Motion and sustained defendants' Motions. The Court of Civil Appeals affirmed. 439 S.W. 2d 853. Both lower courts construed the Dickerson instrument as being a conveyance of a mere right-of-way easement and both courts found no title by limitations. We construe the Dickerson instrument the same as did both lower courts, that is, a conveyance of one right-of-way easement over three tracts of land. We agree that plaintiffs' Motion for Summary Judgment was properly overruled. However, we hold that defendants were not entitled to summary judgment because of the question of title by limitations. Therefore, we reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause to the trial court for further proceedings on the question of title by limitations.

Around the turn of the century the Texas and New Orleans Railroad Company was building its main line between Dallas and Beaumont. As a result, in 1901, the Dickersons executed the instrument in question. Whatever interest in land that was granted to the Texas and New Orleans Railroad Company by the Dickersons has by mesne conveyances passed to plaintiff Southern Pacific Company, which has executed a mineral lease to plaintiff Rio Bravo Oil Company.

■ The first question to be decided is whether the Dickerson instrument was a conveyance of fee simple title or a mere right-of-way easement. The first paragraph of the Dickerson instrument states that the Dickersons " * * * do grant, sell and convey unto the Texas & New Orleans Railroad Company, its successors or assigns, a right of way for the Texas & New Orleans Railroad, over and across the following described tract of land in Henderson County, Texas: * * *." [1] The instrument then describes three tracts of land, the second description beginning with "Also the following land for Station Grounds * * *" and the third description beginning with "Also another tract. * * *" The second and third described tracts are contiguous to and situated on either side of the first described tract.

Plaintiffs contend that the Dickerson instrument conveyed a fee simple estate in the second and third described tracts; and furthermore, since they claim the fee on both sides of the easement over the first described tract, they contend that their ownership extends beneath the surface to the center line of the first described tract. Defendants, primarily Hunt Petroleum Corporation, contend that the Dickerson instrument conveyed only a right-of-way easement over all three described tracts and that, therefore, plaintiffs own no interest in the minerals. We think the Dickerson instrument is most reasonably interpreted as a conveyance of one right-of-way ease-

1. The entire Dickerson instrument is presented in Appendix A of this opinion.

ment over all three described tracts—the first described tract to be used for the railroad itself (roadbed and tracks) and the second and third described tracts to be used for station grounds (depot, flag station and side tracks).

In interpreting the Dickerson instrument it is helpful to review the statutory law existing at the time such instrument was executed; Art. 6318, Vernon's Tex.Civ. Stat. (1925):

"Every railroad corporation shall have the right to cause such examination and survey for its proposed railway to be made as may be necessary to the selection of the most advantageous route, and for such purpose may enter upon the lands or waters of any person or corporation, but subject to responsibility for all damages that may be occasioned thereby."

Art. 6319, Vernon's Tex.Civ.Stat. (1925):

"Such corporation shall have the right to lay out its road *not exceeding two hundred feet in width,*[2] and to construct the same; * * *."

Art. 6355, Vernon's Tex.Civ.Stat. (1925):

"Every railroad company organized under this title shall make an actual survey of its route or line for a distance of twenty-five miles on its projected route, and shall designate the depot grounds along said first twenty-five miles before the roadbed is begun. No railroad company shall change its route or depot grounds after the same have been so designated."

Art. 6356 Vernon's Tex.Civ.Stat. (1925):

[The provisions of Art. 6355 likewise apply to each subsequent twenty-five mile section.]

Plaintiffs contend that if a right-of-way easement had been intended over all three tracts, then the instrument would have described one large tract instead of three small contiguous tracts. We think there are two probable reasons why the instrument described the property as three separate tracts. Firstly, the tracts were described separately because they were surveyed separately, as contemplated by the previously quoted statutes. The instrument itself shows that the first described tract was surveyed before the other two tracts were surveyed, as evidenced in the descriptions of the second and third tracts by reference to the description of the first tract. The three tracts described in the Dickerson instrument totaled 300 feet in width—100 feet to be used for the railroad itself and 200 feet to be used for station grounds. Secondly, the second and third described tracts were made subject to a condition, whereas, the first described tract was not.

In construing the Dickerson instrument the terms "Texas and New Orleans Railroad *Company*" and "Texas and New Orleans *Railroad*" as these terms are used in the instrument must be distinguished. An examination of the instrument will reveal that the term "Texas and New Orleans Railroad *Company*" is given its obvious meaning, that is, the corporate entity. The term "Texas and New Orleans *Railroad*" is used to mean the railroad itself (roadbed and tracks). This meaning of "Texas and New Orleans *Railroad*" is evidenced by its many uses in the instrument, such as *"center line of the Texas and New Orleans Railroad as now located on the ground"* and *"construction and operation of said* Texas and New Orleans *Railroad."*

Plaintiffs contend that the Dickerson instrument refers to the first described tract as *"the right-of-way"* meaning the *only* right-of-way, as evidenced by the "condition" paragraph which states that such condition " * * * does not in any manner apply to the right of way for said Texas and New Orleans Railroad as heretofore described and this conveyance as to

---

**2.** All emphases in this opinion have been added.

said right of way is absolute and conditional." The question arises that if a right-of-way easement were meant to apply to all three described tracts, then why does the above quoted language use the term *"the* right of way" as indicating only one right-of-way. The answer of course is that "the right of way" refers to the portion of the right-of-way to be used *"for* said Texas and New Orleans *Railroad"* meaning the railroad itself, as opposed to the portion of the right-of-way to be used for station grounds.

The Dickerson instrument was obviously prepared by the Texas and New Orleans Railroad Company. The instrument is partly a printed form and partly a typewritten addition, with the granting clause and the habendum clause being part of the printed form. The printed form contains the term "Texas & New Orleans Railroad *Company"* as well as the term "Texas & New Orleans *Railroad."* Part of the printed form appears as follows:

" * * * [grantors] have granted, bargained, sold and conveyed, and by these presents do grant, sell and convey unto the Texas & New Orleans Railroad *Company,* its successors or assigns, a right of way for the Texas & New Orleans *Railroad,* over and across the following described tract of land in ———— County, Texas:" [the remainder of the page is blank, leaving space for the description of property to be inserted].

The above quoted printed part of the form instrument results in a conveyance of a right-of-way for the railroad itself over any property described under the printed form part, *unless* the property description which is added changes the printed form part of the instrument.

In the Dickerson instrument there are three tracts which are described by typewritten additions to the printed form part of the instrument. The description of the first tract does not change any part of the printed form; therefore, a right-of-way for the railroad itself is granted over the first described tract. The description of the second tract begins "Also the following land" which is reasonably interpreted as meaning "in addition to the above described first tract." Therefore, since the description of the second tract is an addition to the description of the first tract, the same right-of-way for the railroad itself would have been granted, but for the words "for Station Grounds" which follow "Also the following land." Because of the words "for Station Grounds" the second described tract *does* change the wording of the printed form. The change is from "for the Texas & New Orleans *Railroad"* to "for Station Grounds." The purpose for which the tract is to be used is the *only* change made; therefore, a right-of-way is granted, not to be used for the railroad itself but to be used for station grounds. The description of the third tract begins "Also another tract" which is reasonably interpreted as meaning "in addition to the above described second tract." This reference to the second described tract together with the subsequent "condition" paragraph indicates that the third described tract is also to be used for station grounds which include a depot, a flag station and side tracks. Hence, there is nothing in the three typewritten descriptions which change the printed form part of the instrument, except the changes of the purposes for which the right-of-way over each of the three tracts was granted. There is only one estate in land specified in the deed, that being a "right-of-way." Nothing in the deed indicates that any different estate in land was intended to be granted. The necessary conclusion, therefore, is that the Dickerson instrument granted one right-of-way easement over all three tracts described, such tracts to be used for expressed purposes.

Plaintiffs rely primarily upon Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451 (1952); Texas & Pacific Ry. Co. v. Martin, 123 Tex. 383, 71 S.W. 2d 867 (1934); Brightwell v. International-

Great Northern Railroad Co., 121 Tex. 338 49 S.W.2d 437 (1932); Stevens v. Galveston, H. & S. A. Ry. Co., 212 S.W. 639 (Tex.Com.App.1919); and Texas Conservative Oil Co. v. Thompson, 163 S.W.2d 854 (Tex.Civ.App.1942) writ ref'd. In each of these cases there was an *expressed* "grant of land." The courts held that such "grants of land" were grants of fee simple estates even though the term "right-of-way" was used elsewhere in the deeds. These cases are not applicable here because the Dickerson instrument did not make an expressed "grant of land." There is no expressed grant of any estate in land except a right-of-way and there is no evidence that the Texas and New Orleans Railroad Company intended to purchase more than a right-of-way, nor is there evidence that the Dickersons intended to convey any estate in land other than a right-of-way. Therefore, we construe the deed the same as did the trial court and the Court of Civil Appeals, that is, that there was a grant of one right-of-way easement over all three tracts described in the instrument.

We now consider plaintiffs' alternative claim of title by limitations under the three, five, ten and twenty-five year statutes of limitations. (Articles 5507, 5509, 5510, and 5519, Vernon's Tex.Civ. Stat., respectively). We agree with the Court of Civil Appeals' opinion that in view of the construction of the Dickerson instrument as being a conveyance of an easement only, the three, five and twenty-five year statutes of limitations are inapplicable; only the ten year statute of limitations is available to plaintiffs. Since under our holding the Dickersons and their successors in title retained the fee simple title subject to the right-of-way easement over the land in question and since plaintiffs and their predecessors in title took possession of the land under the Dickerson instrument, the ten year statute of limitations requires that before plaintiffs

are entitled to title by limitations there must first have been notice to the Dickersons or their successors in title that the claim was adverse, that is, that plaintiffs or their predecessors in title claimed the fee simple title to the land in question and not merely the right-of-way easement as conveyed by the Dickerson instrument. Plaintiffs' summary judgment proof of notice of the adverse claim consisted of various leases and affidavits which reveal that for approximately sixty years plaintiff Southern Pacific Company and its predecessor in title, the Texas and New Orleans Railroad Company, have leased portions of the land in question to others for commercial, industrial and agricultural purposes, including lumber yards, vegetable sheds, pickle plants, seed houses, rock crushing machinery, pasturing and truck farming. Most of the land has been fenced. Plaintiffs contend that such uses were so inconsistent with the use of the easement for railroad purposes[3] as to constitute notice of the adverse claim to the Dickersons and thereby begin the limitations period of adverse possession. Plaintiffs urge that their Motion for Summary Judgment in the trial court should have been sustained on the basis of title by limitations.

We agree with the Court of Civil Appeals that plaintiffs' summary judgment proof does not constitute notice of the adverse claim. The proof reveals that the leases were made for nominal amounts, ranging from $1.00 to $40.00 per annum. Many of the lessees were engaged in the business of "buying and shipping." Portions of the land in question have continued to be used for the railroad itself, depot and side tracks. In regard to plaintiffs' contention that the various uses of the land in question by the lessees constituted notice of the adverse claim, we agree with what the Court of Civil Appeals said, to wit:

"This brings us to the question of whether the acts and conduct of the railroad were sufficient to put the defendants on no-

---

3. See Articles 6341, 6344, 6393, 6401 and 6402, Vernon's Tex.Civ.Stat.

tice. Plaintiffs contend first that the fencing of the property, together with agricultural leases to strangers, was sufficient to establish notice of repudiation and adverse claim. We do not agree. The fencing of the right-of-way by the railroad was not an act disconnected from the use of the property for railroad purposes. It had a right to fence the right-of-way under the terms of Article 6402, V.A.T.S. to lessen its liability for killing or injuring livestock. See Galveston, H. & S. A. Ry. Co. v. McIver, (Tex.Civ.App.) 245 S.W. 463. Nor do we believe the leasing of the right-of-way to the various agricultural lessees was such an act so disconnected from the use of the property for railroad purposes as to indicate repudiation and adverse claim. The consideration for the leases was either nominal or partly in consideration for keeping the right-of-way clean. The obligations devolved upon the railroad as the owner of the easement over the right-of-way as provided by Article 6401, V.A.T.S.

"Plaintiffs next contend that the letting by the railroad of the portion of the right-of-way to various lessees for the construction of buildings, seed houses, lumber yards, vegetable sheds, pickle plants and rock crushing machinery was sufficient to give notice to the defendants of a repudiation of the title and an adverse claim by the railroad to the fee. Article 6344, V.A.T.S. provides that railroad corporations 'shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the accomodation and use of passengers, freights and business interests, or which may be necessary for the construction or operation of its railway; * * *' Article 6341, V.A.T.S. provides that railroad corporations shall have the right 'To purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway, stations and other accommodations necessary to accomplish the objects of its incorporation. * * *' The evidence shows that most, if not all, of the lessees were customers of the railroad. As we view it, the conduct of the railroad in leasing the premises was in furtherance of the business of transportation of freight. The railroad had a right to erect similar structures itself on the grounds for such purposes. City of Knoxville v. Kaiser, 161 Tenn. 607, 33 S.W.2d 411. If the company could put up buildings, we see no reason why it could not license others to do the same thing for the same object. In either event, the construction of buildings for such purposes would not therefore be sufficient to amount to notice of repudiation and adverse claim."

We conclude that plaintiffs' Motion for Summary Judgment was properly overruled because plaintiffs' summary judgment proof does not constitute notice of the adverse claim.

We next consider the correctness of the summary judgment ordered for defendants insofar as it relates to the title by limitations question. In summary judgment proceedings the moving party is not entitled to summary judgment simply because he negates the summary judgment proof offered by the non-moving party. We have held that the summary judgment proof relied upon by plaintiffs does not constitute notice of the adverse claim which is an essential element of plaintiffs' cause of action based on title by limitations. However, simply because plaintiffs' summary judgment proof does not show notice of the adverse claim does not mean that plaintiffs could not have other evidence which would show such notice. In other words, during the summary judgment proceedings plaintiffs have attempted to show notice of the adverse claim by evidence of certain uses made of the land in question; however, during a regular trial plaintiffs would not be precluded from showing notice of the adverse claim by actual notice or some other method. Plaintiffs' pleadings do not preclude such proof. Defendants have not negated all possible

means of notice of the adverse claim, for example, defendants have not negated the possibility of actual notice. The failure of one party (plaintiffs here) in a hearing on a motion for summary judgment to discharge the burden which would rest on him at the trial on the merits is no ground for a summary judgment in favor of the other party (defendants here). King v. Flamm, 442 S.W.2d 679 (Tex. 1969); Prestegord v. Glenn, 441 S.W.2d 185 (Tex. 1969); and Tigner v. First National Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85. Having determined that plaintiffs' Motion for Summary Judgment was properly overruled and that defendants' Motion for Summary Judgment were improperly sustained on the question of title by limitations, the cause must be remanded to the trial court for further proceedings on the question of title by limitations. In view of this holding, plaintiffs' other points of error become immaterial.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

### APPENDIX A

"THE STATE OF TEXAS
COUNTY OF HENDERSON

"KNOW ALL MEN BY THESE PRESENTS, That we J. L. Dickerson joined by his wife Ida E. Dickerson of the County of Henderson, State of Texas, in consideration of One and No/100 Dollars cash paid by the TEXAS & NEW ORLEANS RAILROAD COMPANY, a corporation created under the laws of the State of Texas, and having its comicile in the City of Houston, Harris County, Texas, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, sell and convey unto the Texas & New Orleans Railroad Company, its successors or assigns, a right of way for the Texas & New Orleans Railroad, over and across the following described tract of land in Henderson County, Texas: **

"Being a part of the I. W. Burton survey described by metes and bounds as follows viz:—Beginning at a point in the east boundary line of the I. W. Burton survey and in the west boundary line of the Jessie Henshaw survey 708½ feet north of the south east corner of same. Thence in a northwesterly direction parallel to and 50 feet to left of the center line of the Texas and New Orleans Railroad as now located on the ground at 4260 feet a point opposite to and 50 feet to left of Engineers Station 2271 + 00 as now located on the ground. Thence in a southwesterly direction at right angles to the center line a distance of 50 feet. Thence in a northwesterly direction parallel to and 100 feet to left of the center line at 40 feet cross a line claimed by Mrs. Gardner as the west boundary line of this tract of land, at 280 feet a point in the west boundary line of said tract of land. Thence north with said boundary line at 105 feet cross the center line at Engineers Station 2267 + 75 as now located on the ground, at 210 feet corner. Thence in a southeasterly direction parallel to and 100 feet to left of the center line at 238 feet a fence at 370 feet a point opposite to and 100 feet to left of Engineers Station 2271 + 00. Thence in a southwesterly direction at right angles to center line 50 ft. Thence in a southeasterly direction parallel to and 50 feet to left of the center line at 120 feet a point in the line claimed by Mrs. Gardner as the east boundary line of said tract of land, at 4260 feet a point in the east boundary line of said tract of land. Thence south with said boundary line at 51½ feet across the center line at Engineers Station 2313 + 60 as now located on the ground at 103 feet the place of beginning containing 11.-268/1000 Acres more or less.

"Also the following land for Station Grounds described by metes and bounds

** Underscored portions denote the printed form part of the original instrument. Portions not underscored denote typewritten or handwritten additions to the printed form part.

as follows viz:—Beginning at a point in the south boundary line of the right of way 100 feet wide of the Texas and New Orleans Railroad opposite to and 50 feet to left of Engineers Station 2371 + 00 as now located on the ground. Thence in a southeasterly direction parallel to and 50 ft to right of the center line with said boundary line of the right of way distance of 3000 feet to a point opposite to and 50 feet to right of Engineers Station 2301 + 00 as now located on the ground. Thence in a southwesterly direction at right angles to the center line a distance of 100 feet. Thence in a north-westerly direction parallel to and 150 feet to left of the center line a distance of 3000 feet to a point opposite to and 150 feet to left of Engineers Station 2271 + 00 as now located on the ground. Thence in a northeasterly direction at right angles to the center line a distance of 100 feet to the place of beginning.

"Also another tract the same survey beginning at a point in the north boundary line of the right of way of the Texas and New Orleans Railroad opposite to and 50 feet to left of Engineers Station 2271 + 00 as now located on the ground. Thence in a northeasterly direction at right angles to the center line a distance of 100 feet to the place of beginning.

"Also another tract the same survey beginning at a point in the north boundary line of the right of way of the Texas and New Orleans Railroad opposite to and 50 feet to left of Engineers Station 2271 + 00 as now located on the ground. Thence in a northeasterly direction at right angles to the center line a distance of 100 feet. Thence in a southeasterly direction parallel to and 150 feet to left of the center line a distance of 3000 feet to a point opposite to and 150 feet to left of Engineers Station 2301 + 00 as now located on the ground. Thence in a southwesterly direction at right angles to the center line a distance of 100

feet to a point in the north boundary line of the right of way 100 feet wide. Thence in a northwesterly direction with said boundary line of the right of way a distance of 3000 feet to the place of beginning containing in both tracts 13$^{77.4}$⁄$_{1000}$ Acres more or less.

"This conveyance is made upon the condition that the said Texas and New Orleans Railroad shall upon the construction and operation of said Railroad construct a side track or side tracks and establish a flag station at which all regular freight or passenger trains, except express trains shall stop on signal for the receipt and delivery of freight and passengers, and that a depot suitable for the accommodation of freight and passenger business shall be established and maintained upon the said lands as soon after the construction and operation of said Texas and New Orleans Railroad as the business at said station shall be deemed by said Texas and New Orleans Railroad Company to be of sufficient volume to warrant the establishment of said depot. It is agreed and understood however by the grantor herein that the foregoing does not in any manner apply to the right of way for said Texas and New Orleans Railroad as heretofore described and this conveyance as to said right of way is absolute and unconditional.

"TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Texas & New Orleans Railroad Company, for the purposes aforesaid forever.**

"IN TESTIMONY WHEREOF we have hereunto signed our names this 18 day of Jany, A.D. 1901.**

/s/ J. L. Dickerson
/s/ Ida E. Dickerson"

** Underscored portions denote the printed form part of the original instrument. Portions not underscored denote type-written or handwritten additions to the printed form part.

**730**

GREENHILL, Justice (concurring).

This is a "concurring" opinion because I agree with the judgment of the majority that there must be a remand of this cause for a trial on the adverse possession points. I strongly disagree with the majority that there was a conveyance of only a right of way easement over all the land in question. In substance, therefore, this is a dissenting opinion.

The Dickerson deed (and it was labeled "Deed" on its outer cover) did not, fairly construed, convey a right of way over all the land in controversy. It conveyed a right of way (easement) over the center strip, and a conveyance of the fee upon condition subsequent to the two outer tracts.

There is, at the beginning of the instrument, a granting clause of a right of way over a particularly described area for the railroad tracks. I shall call this area tract A.

Then, in the paragraph following, another tract (called tract B for purposes of this opinion) is described. That paragraph begins:

"Also the following *land* [and the use of the word *land* is important as will be noted below] for Station Grounds described by metes and bounds as follows viz:—

Beginning at a point *in the south boundary line of the right of way 100 feet wide.* * * *" [Emphasis throughout is mine.]

In a third paragraph, the instrument conveys what I shall call tract C:

"Also another *tract* [*of land*] the same survey *beginning* * * * *in the north boundary line of the right of way.* * * *"

The metes and bounds description continues and calls for a joinder point "in the north boundary line of *the* right of way."

A fair construction of the following paragraph is that the grant of the right of way, the center tract, is made uncon-

ditionally. But the grant of *the land* in tracts B and C is upon a condition subsequent. The condition was that there be erected a station house and side tracks. It is agreed that these were built, thereby fulfilling the conditions.

That paragraph reads:

"This conveyance is made upon the condition that the said Texas and New Orleans Railroad shall upon the construction and operation of said Railroad construct a side track or side tracks and establish a flag station at which all regular freight or passenger trains, except express trains shall stop on signal for the receipt and delivery of freight and passengers, and that a depot suitable for the accommodation of freight and passenger business shall be established and maintained upon the said lands as soon after the construction and operation of said Texas and New Orleans Railroad as the business at said station shall be deemed by said Texas and New Orleans Railroad Company to be of sufficient volume to warrant the establishment of said depot. *It is agreed and understood however by the grantor herein that the foregoing does not in any manner apply to the right of way for said Texas and New Orleans Railroad as heretofore described and this conveyance as to said right of way is absolute and unconditional.*"

Each of the 3 tracts is described separately. There is no over-all, outside description so as to bring them all within the same granting clause of the right of way in the first paragraph. The paragraph quoted just above emphasizes the separate character of the lands dealt with. The conditions imposed on tracts B and C (erection of the station house et cetera) "does not in any manner apply to *the* right of way * * * as heretofore described, and this conveyance *as to said right of way* is absolute and unconditional." Thus the parties described an unconditional grant of a right of way over tract A,

and the grant of "the following land" and of "another tract" [of land] upon conditions subsequent which have been fulfilled. The word "grant" is necessarily implied in the two paragraphs in which the grantors convey "also the following land" and "also another tract the same survey."

If there was the granting of a mere right of way over one large tract, I would agree with the majority opinion. But if, as in the case of tracts B and C, there is a grant of *land*, then there is a conveyance of a fee, or fee upon condition subsequent as is the case here.

There have been a number of cases in this State concerning the title to strips of land granted for railroad purposes. Some have held that an easement only was conveyed; others that a fee simple was conveyed even though the particular purposes of the grant were stated; and still others have held that a fee simple upon condition was conveyed. This Court has applied the "intention of the parties as expressed in the writing" rule, and has said that the instrument must be considered as a whole and viewed from its four corners. One of the keys in the cases mentioned above is the granting clause. If the grant is of land, the Court has found a fee even though the instrument within itself refers to the tract as a right of way.

One of the early cases was Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737 (1913). This was an action to restrain the railroad from drilling for oil on what the plaintiffs considered to be only a right of way. The conveyance to the railroad was a simple one and described only one tract. The granting clause was to "the right of way" over a described tract; and the railroad was further given the right to use the "timber, earth, stone, and mineral existing or that may be found within the right of way hereby granted." [1] The hold-

ing was that the railroad owned only an easement, and it was enjoined from the drilling.

The grants in Stevens v. Galveston H. & S. A. Ry. Co., 212 S.W. 639 (Tex.Comm. App.1919), were of strips of land on condition that they would be used exclusively for railroad depot grounds and railroad business purposes. There was also a provision that upon a cessation of such use, "said land" should revert to the grantors or their successors. Within the instrument, it was stated that the conveyances were of rights of way for the railroad. Other portions of the instrument referred to "the right of way." It was contended that the instruments conveyed only an easement for railroad purposes, or alternatively, that the grant was a fee upon a limitation (determinable fee), not on condition subsequent. The holding is that the grant was of land; and that the wording of the instrument, fairly construed, compelled a holding that the conveyance was of a fee simple upon condition subsequent.

In Brightwell v. International-Great Northern Railroad Co., 121 Tex. 338, 49 S.W.2d 437 (1932), the grant was "a strip of (200) Two Hundred feet in width of land." A final paragraph also granted the railway the right to use "earth, material, timber and rock as may be found on my lands herein mentioned, and *granted herein as right of way* * * *." The railroad was also released from damages because of works in the right of way. There is a good deal of detailed reasoning, but the holding is that the conveyance was of the fee simple; i. e., the grant was of land.

In Texas & Pacific Ry. Co. v. Martin, 123 Tex. 383, 71 S.W.2d 867 (1934), the instrument "granted * * * unto the Texas & Pacific Railroad Co. for Depot purposes and uses, all that tract of land

---

1. There is also a holding, not relevant here, that the right to take "stone and mineral" which might be found in the right of way did not include a grant of subsurface oil and gas.

* * *." The instrument later repeated that "the same [land] to be permanently used by said R. R. Co. for depot purposes, on the Pacific Av. route through Dallas." The railway did use the land for such purpose for many years, but then it abandoned the depot. The holding was that the instrument conveyed a fee simple, and that the stating of the purpose of the grant, or the contemplated use, did not change the estate granted.

The Brightwell and Martin opinions were followed in Texas Conservative Oil Co. v. Thompson, 163 S.W.2d 854 (Tex. Civ.App.1942, writ refused, opinion by the late Justice Norvell). By the instrument, the grantor did "grant, sell and convey" to the railroad " * * * all those certain tracts, pieces or parcels of land," describing them. The instrument then stated that it was "conveyed to said railway company to be held, occupied and used by it as and for its use as a right of way." In the same instrument, other land was described. As in our case, the second conveyance simply began "Also, three (3) several tracts [with description] * * * conveyed to said railway company to be held, occupied and used by it, as and for its use as depot grounds." The holding was that all of the tracts were conveyed in fee simple.

These and several other cases were considered together in an able opinion by Justice Smedley in Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451 (1952). The grant was of "the following described piece or parcel of land, to-wit * * *." (a strip 550 feet long and 80 feet wide). The conveyance was upon the condition that the railroad would "establish a stop on the right of way hereinabove conveyed," and that such stop should be kept and maintained forever. There was a usual habendum clause followed by these words, "However, this deed is made as a right-of-way deed * * *, and in case said railway shall not be constructed over said land then this conveyance shall be of no effect."

The instrument also provided that the railroad would permit the opening of streets "across said right of way." The holding was that the conveyance was of the fee. The Court emphasized that the grant was of land, and the language about the right of way was descriptive of the use to which the land was to be put. The Court noted a condition as to the establishment of a railroad, but the condition had been fulfilled. The portion stating that the stop should be maintained forever was held to be a covenant only.

Part of the reasoning of the Court in deciding that a fee was conveyed and not a mere easement was that a "stop" must be established on land. The opinion stated that "It [the stop] could not be established on an intangible right, that is, an easement. The same is true of the obligation to allow streets to be opened 'across said right of way.'" 252 S.W.2d at 454. Bravo calls our attention to the fact this reasoning is applicable here, and that the passenger and freight depot were required to be constructed on "said lands."

Under the above cases, the center tract passes as a right of way under Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., the first case cited above. Under all of the other cases cited, there being a conveyance of *land,* tracts B and C were conveyed in fee upon condition subsequent even though they were granted in conjunction with a right of way.

The reasoning of the majority opinion begins with a reference to a series of statutes dealing with the powers of condemnation of land by railroads. If the land is acquired by condemnation, the railroad gets only an easement. But these statutes have absolutely nothing to do with this case. There is not even a hint in this record that any of the land in controversy was acquired even under threat of condemnation. The grantors *wanted* the railroad to come to their little area, and they *gave* the right of way to the railroad (tract A) unconditionally, and conveyed tracts B and C upon condition that side tracks and a depot

would be built. There are a great many cases which hold that a railroad may acquire land by gift or purchase completely apart from these irrelevant condemnation statutes. Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453 (1890); Brightwell v. International-Great Northern Ry. Co., 121 Tex. 338, 49 S.W.2d 437 (1932); Stevens v. Galveston H. & S. A. Ry. Co., 212 S.W. 639 (Tex.Comm.App.1919).

The second premise from which the majority starts its reasoning is that some intention may be gained by the use of the words "Texas and New Orleans Railroad *Company*" in some places in the Dickerson deed, and the words "Texas and New Orleans *Railroad*" in other places. To me, this is a complete *non sequitur,*—a distinction without a difference. If anything, it strengthens the construction that the parties intended two different estates; i. e., a right of way for the *railroad* (the railroad tracks and ties) and a fee for the depot, storage areas, and other facilities for the railroad *company*.

It was the contention of Rio Bravo that since (or if) it owns the fee on both sides of the easement, it owns the fee, i. e., the minerals to the center of the easement strip under Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080 (1932). Since the majority holds that Bravo here owns no fee estate, no useful purpose would be served by an analysis of the *Weed* opinion. There are also several interesting questions raised, and which are discussed in the opinion of the Court of Civil Appeals, regarding parties, default judgments, and the filing of disclaimers. Since no holdings are made on these points, no useful purpose would be served by discussing them in a concurring [dissenting] opinion.

At the very least, it should be held that the railroad acquired a fee simple upon condition, now performed, to the two tracts adjoining the center tract conveyed as a right of way.

CALVERT, C. J., and McGEE, J., join in this concurring opinion.